175 N.J. Super. 72 (1980)
417 A.2d 585
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH KHAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 7, 1980.
Reargued June 2, 1980.
Decided July 15, 1980.
*74 Before Judges SEIDMAN, MICHELS and FURMAN.
Stanford M. Singer, Assistant Deputy Public Defender, and Laura M. LeWinn, Deputy Director, Division of Mental Health Advocacy, Department of the Public Advocate, argued the cause for appellant (Stanley C. Van Ness, Public Defender, attorney; Stanford M. Singer, Michael L. Perlin, Director, Division of Mental Health Advocacy, Department of the Public Advocate, and Laura M. LeWinn, of counsel and on the brief).[1]
Charles M. Moriarty, court-appointed counsel, also argued the cause for appellant (Anschelewitz, Barr, Ansell & Bonello, attorneys; Charles M. Moriarty on the brief).
Elaine Zamula, Assistant Prosecutor, argued the cause for respondent (Alexander D. Lehrer, Monmouth County Prosecutor, *75 attorney; Alton D. Kenney, Assistant Prosecutor, and Elaine Zamula, of counsel and on the brief).
The opinion of the court was delivered by SEIDMAN, P.J.A.D.
Defendant was indicted in April 1977 for murder and, in two additional counts, for possession of pistols without having obtained a permit therefor. We granted his motion for leave to appeal from an interlocutory order entered on February 8, 1979, after a competency hearing, which adjudged him competent to stand trial, denied the Public Defender's application for a hearing on the issue of defendant's insanity at the time of the crime, appointed a special attorney for the specific purpose of presenting on behalf of defendant at the trial the defense of self-defense, and directed the Public Defender to assert on behalf of defendant at the trial the defense of insanity.
The Public Defender is unable to determine what position to take with respect to the competency ruling and thrusts upon us the burden of "review[ing] the record below and reach[ing] a just determination." Defendant's special counsel argues that defendant was correctly found to be competent to stand trial. So does the State and Counsel for the Division of Mental Health Advocacy. All express the view that if defendant is competent to stand trial, the insanity defense may not be interposed on his behalf over his objection. The Public Defender claims that the judge erred in ordering conflicting defenses of self-defense and insanity to be tried by separate defense counsel before the same jury, and urges that there should be either two juries or serial trials. Special counsel opts for a bifurcated trial on these issues. The State opposes serial or bifurcated trials, maintaining that there should be a single trial before one jury.
For reasons that follow we reverse and remand for a new hearing on the issue of competency to stand trial. The pertinent factual background of this bizarre case emerges from statements made by defendant to the police and others, including psychiatrists who examined him.
*76 For some time prior to March 16, 1977 defendant had been engaged in the painting and repair of a house owned by his mother's sister. During this period Walter and Rose McCue were tenants occupying one of the three apartments in the house. Defendant believed that McCue resented his being paid for his services while McCue had made repairs to the house for no remuneration. Sensing this resentment and suspecting that McCue was armed, defendant began carrying a weapon. He felt that McCue was a violent person and part of a larger scheme or conspiracy to harm him.
On March 16, 1977 defendant went to his aunt's house to work on one of the apartments, which work had apparently been started by McCue. According to defendant, McCue approached him and angrily stated that he had not finished the job. Nevertheless, defendant prepared to begin the work. He then observed McCue in the semi-darkness of an adjoining room, "psyching himself up," breathing deeply, gesticulating, rising up and down on his toes, and holding an object in his hand, which defendant could not identify. When defendant told McCue he was about to start working, McCue screamed and charged at defendant, brandishing a hammer. Defendant drew his revolver and fatally shot McCue. He informed his aunt, who called the police. McCue's body was found in the hallway of the apartment, a hammer clutched in one hand.
Defendant told the police that he shot McCue in self-defense, a position he has adamantly maintained throughout the proceedings despite overwhelming psychiatric opinion evidence that defendant's belief that he acted in self-defense and the facts he cites in support thereof have no basis in reality and are the product of a paranoid delusion. Defendant is equally determined not to permit counsel to raise the defense of insanity on his behalf.
Following defendant's indictment in April 1977 there have been five proceedings on the issue of defendant's competency to stand trial. At the first, held in July 1977 on the Public Defender's motion, Judge Yaccarino determined that defendant was incompetent to stand trial and also ordered his commitment to a mental institution "until such time it is determined that he *77 can be brought or restored to reason." A periodic review of the commitment, as well as a further hearing on defendant's competency to stand trial, took place before Judge Shebell on February 3, 1978. He ordered the involuntary commitment to continue, but at the same time found defendant competent to stand trial and directed that the matter be restored to the active trial list. Judge Shebell held another periodic review, coupled with a competency inquiry, in May 1978, and again concluded that defendant could stand trial but that the commitment should continue. One month later defense counsel raised again the issue of defendant's competency to stand trial at a hearing before Judge Davidson on the prosecutor's motion to determine the order of proofs in the event the insanity defense were to be interposed notwithstanding defendant's objection. Judge Davidson heard the matter in July and determined that defendant was not competent to stand trial. The latter's commitment was continued. In January 1979 defense counsel applied for a hearing under N.J.S.A. 2A:163-2 on whether defendant was insane at the time the crime was committed and, if it should be found that he was, for an order dismissing the indictment. Judge Shebell heard the matter. He concluded that there should first be another hearing on the issue of defendant's competency to stand trial before consideration would be given to whether defendant was insane when the crime was committed. That hearing, at which counsel agreed no further medical testimony was needed, occurred in February 1979 and led to the order which is the subject of this appeal.
Most of the psychiatrists who testified at the hearings or submitted reports agreed that defendant suffered from the mental disorder of schizophrenia, paranoid type. All were in accord that a product of defendant's condition, even if he was not actually schizophrenic, as one or two of the psychiatrists seemed to believe, was his delusion that a conspiracy existed to do him harm and that decedent was part of the conspiracy. The split concerned the issue of defendant's competency to stand trial, on which the psychiatrists expressed divergent views.
Our conclusion that the matter should be remanded for a further hearing on defendant's competency to stand trial is not *78 to be construed as any intimation on our part that the findings of one or more of the three judges involved were necessarily erroneous and not supported by the record. While one may question diverse findings and conclusions reached by different judges within a relatively short period of time on essentially the same proofs, the conflicts serve to fortify our view that a remand is in order. Initially, we observe that two years have elapsed since the last testimony relating to the problem was taken in July 1978. Furthermore, there is medical testimony in the record that defendant has refused to accept therapy or medication, thus increasing the medical probability of a deterioration of his paranoid condition and an enlargement of his delusional state. It is entirely possible, if not probable, that a medical opinion given in 1978 would not accurately portray defendant's present mental state. Beyond this, our review of the medical testimony and reports discloses a confusing admixture of the concepts of sanity bearing on defendant's ability to distinguish right from wrong and on his competency to stand trial.
We recognize that the indictment in this matter was returned in 1977 and trial has been long delayed by the competency hearings and this appeal. But an extraordinary situation confronts us: defendant's insistence that he shot the decedent in self-defense and his stubborn refusal to avail himself of the defense of insanity, despite strong medical evidence that defendant's justification for the homicide was delusional and lacking in reality. Since it is evident that defendant's delusion, if still present, may be closely intertwined with his ability to consult intelligently with counsel relative to his defense, we are convinced that a new hearing on competency to stand trial, based upon current psychiatric examinations and evaluations, is necessary to avoid a possible miscarriage of justice. But see State v. Snell, 136 N.J. Super. 506 (App.Div. 1975), certif. den. 69 N.J. 387 (1976).
The concept of insanity, as it relates to competency to stand trial, is succinctly set forth in Aponte v. State, 30 N.J. 441 (1959):

*79 As a test of ability to stand trial on a criminal charge, insanity means a mental illness or condition which prevents the accused from comprehending his position and from consulting intelligently with counsel in preparation of his defense. [At 450]
The court in Aponte carefully distinguished between incapacity and insanity inquiries. "The fact that an accused may be committed civilly by reason of ... tendencies here claimed does not of itself establish inability to stand trial on an indictment." Id. at 452. Quoted with approval was the following excerpt from Lyles v. United States, 254 F.2d 725, 729 (D.C. Cir.1957), cert. den. 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1958):
... A paranoiac or a pyromaniac may well understand the charges against him and be able to assist in his defense. "To assist in his defense" of course does not refer to legal questions involved but to such phases of a defense as defendant usually assists in, such as accounts of the facts, names of witnesses, etc.... . [30 N.J. at 453]
The governing criteria of whether a person lacks capacity to understand the proceedings against him or to assist in his own defense, all of which must be established, are contained in the new Code of Criminal Justice, N.J.S.A. 2C:4-4 b, made applicable here by reason of N.J.S.A. 2C:1-1 c(1). The pertinent subparagraph, 4 b, provides that a person shall be considered mentally competent to stand trial on criminal charges if the proofs shall establish:
(1) That the defendant has the mental capacity to appreciate his presence in relation to time, place and things; and
(2) That his elementary mental processes are such that he comprehends:
(a) That he is in a court of justice charged with a criminal offense;
(b) That there is a judge on the bench;
(c) That there is a prosecutor present who will try to convict him of a criminal charge;
(d) That he has a lawyer who will undertake to defend him against that charge;
(e) That he will be expected to tell to the best of his mental ability the facts surrounding him at the time and place where the alleged violation was committed if he chooses to testify and understands the right not to testify;
(f) That there is or may be a jury present to pass upon evidence adduced as to guilt or innocence of such charge or, that if he should choose to enter into plea negotiations or to plead quilty, that he comprehend the consequences of a guilty plea and that he be able to knowingly, intelligently, and voluntarily waive those rights which are waived upon such entry of a guilty plea; and

*80 (g) That he has the ability to participate in an adequate presentation of his defense.
The trial judge may avail himself of the provisions of N.J.S.A. 2C:4-5, and his determination of defendant's fitness to proceed shall accord with N.J.S.A. 2C:4-6 a. We would expect the trial judge, at the conclusion of the hearing, to find the facts and state his conclusions of law thereon in accordance with R. 1:7-4.
In the event defendant is found incompetent to stand trial, such determination will render moot the other points raised on this appeal. The proceeding against defendant would be suspended, subject to such further action as may be taken thereafter under N.J.S.A. 2C:4-6 c, d and e. Defendant's continued commitment would be governed by applicable law.
If, however, defendant is found competent to stand trial, the problem of the insanity defense and its interposition by the court against the wishes of defendant will arise again. This troublesome issue was considered recently in Frendak v. United States, 408 A.2d 364 (D.C.Ct.App. 1979). The court in Frendak took note of conflicting results in other jurisdictions, id. at 373, n. 13. It decided to reexamine the previously followed rule, Whalem v. United States, 346 F.2d 812 (D.C. Cir.1965), cert. den. 382 U.S. 862, 86 S.Ct. 124, 15 L.Ed.2d 100 (1965), that a trial judge has discretion to raise an insanity defense over the objection of a defendant competent to stand trial. The court concluded that Whalem required reinterpretation in light of the holdings in North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), that a trial judge could constitutionally accept a plea of guilty to a reduced charge from a defendant who maintained his innocence but chose intelligently to plead to avoid a more severe penalty if he were convicted of the greater offense at a trial, and in Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), that a defendant in a state criminal trial could voluntarily and intelligently elect to waive the assistance of counsel and defend himself. The court cautioned, however, that Alford does not accord a defendant the absolute right to have his guilty plea accepted, and Faretta does not confer upon a defendant a constitutional right to control every aspect of his defense.
*81 Recognizing that a defendant might have a compelling reason to forego the defense of insanity, as, for example, fear of lengthy institutional commitment in the event of an insanity acquittal, the avoidance of the stigma of insanity or the loss of consequential legal rights, or the belief that raising the defense would be equivalent to an admission of guilt, 408 A.2d at 376-377, the court concluded that "if a defendant has acted intelligently and voluntarily, a trial court must defer to his or her decision to waive the insanity defense." Id. at 378. Nevertheless, the court was impelled by "the underlying protective rationale of Whalem" to retain the discretion to raise the insanity defense sua sponte "when a defendant does not have the capacity to reject the defense." Ibid. The court said in summary:
... [W]e require the judge to respect the choice of a defendant capable of voluntarily and intelligently making that choice. The court will now have the discretion to raise an insanity defense sua sponte only if the defendant is not capable of making, and has not made, an intelligent and voluntary decision. [408 A.2d at 379]
The government's position that a finding of competency to stand trial is in itself sufficient indication that the defendant is capable of intelligently waiving an insanity defense was rejected on the ground that such finding "is not intended to measure whether the defendant is also capable of making intelligent decisions on important matters relating to the defense." 408 A.2d at 379. The following procedure was suggested:
... [W]henever the evidence suggests a substantial question of the defendant's sanity at the time of the crime, the trial judge must conduct an inquiry designed to assure that the defendant has been fully informed of the alternatives available, comprehends the consequences of failing to assert the defense, and freely chooses to raise or waive the defense . ..
If the judge finds that the defendant is capable of making a voluntary and intelligent decision to forego an insanity defense, the judge must respect the defendant's decision and permit the jury verdict to stand ... If, on the other hand, the judge is convinced that the defendant can not or has not made such a voluntary and intelligent waiver, the judge has the discretion to raise that defense sua sponte. The strength of the individual's potential insanity defense should not be a factor in the court's decision, except to the extent that such evidence is useful in determining whether the defendant presently is capable of rationally deciding to reject the defense. [408 A.2d at 380-381]
While we find the formula enunciated by Frendak to be largely persuasive, we must utter a word of caution with respect *82 to the scope of the suggested hearing. It should not be converted into a second competency hearing, which would be the case if Frendak were followed in its entirety. Frendak speaks of a defendant's "capab[ility] of rationally deciding to reject the defense." Referring to Faretta and Alford, supra, in which the Supreme Court permitted defendants to waive constitutional rights only after the trial judge had assured himself that the accused was capable of making a voluntary and intelligent choice, Frendak emphasizes that the trial judge must seek the same type of assurance when a defendant chooses to reject an insanity defense. 408 A.2d at 378. But any determination that defendant did not have the mental capacity to make that choice would necessarily conflict with the criterion in N.J.S.A. 2C:4-4 b(2)(f), essential to a determination of a defendant's fitness to proceed, that the defendant, as to plea negotiations or a guilty plea, "be able to knowingly, intelligently and voluntarily waive those rights which are waived upon such entry of a guilty plea." If the same kind of assurance were to be required in the case of a defendant's waiving the defense of insanity, it could not be said logically that a person found competent to stand trial may nevertheless, under the same standard, be incompetent to make a knowing, intelligent and voluntary choice to forego the defense of insanity.
Before the advent of the Code, the traditional standard to be applied in determining whether one is capable of standing trial was that "[o]ne unable to comprehend his position, to consult intelligently with counsel and plan his defense cannot be put to trial." State v. Auld, 2 N.J. 426, 435 (1949). See, also, State v. Spivey, 65 N.J. 21, 36 (1974). The standards of the Code are more precise and detailed. N.J.S.A. 2C:4-4. It is our view that, once defendant's competency to stand trial is established, assuming that it is, and a further hearing is held on the matter of his waiving the defense of insanity, the inquiry into whether the choice was knowing, intelligent and voluntary should be in terms of defendant's awareness of his rights and available alternatives, his comprehension of the consequences of failing to assert the defense and the freeness of the decision to waive the defense, and should avoid an incursion into the area of mental *83 capacity which might develop into an irreconcilable conflict with the finding of competency to stand trial.
The trial judge's task here will be an extremely difficult one. There can be no doubt that there is a fragile dividing line between defendant's competency to stand trial and, should he again be found competent in that regard, his ability to make a knowing, intelligent and voluntary waiver of the insanity defense. Defendant justifies his conduct by insisting that he acted in self-defense. He believes that the question of his insanity is not relevant because he is not and was not insane at the time the shooting occurred. His circuitous rationalization is that he would never kill any human being except under circumstances where it was justified and necessary; consequently, his killing of decedent must have been both justified and necessary. Although the psychiatric evidence strongly indicates that defendant was acting under a paranoiac delusion, it appears doubtful that defendant can ever be convinced that decedent did not attack him and that his belief to the contrary is the product of a disordered mind. This, of course, is relevant upon the issue of defendant's insanity at the time the offense was committed; that is, whether he was laboring under such a defect of reason from disease of the mind as not to know the nature and quality of his act, or, if he did know it, whether he did not know what he was doing was wrong. State v. Coleman, 46 N.J. 16, 39 (1965). It likewise bears upon the matter of defendant's competency to stand trial. And last, but not least in importance, it may cast doubt upon whether defendant's decision not to raise the defense of insanity was made knowingly, intelligently and voluntarily.
If the conclusion reached is that the insanity defense is not to be raised, the trial can proceed without difficulty. On the other hand, if the defense is to be interposed despite defendant's objection, then presenting the defenses of self-defense and insanity at a single trial, with separate counsel as to each, as was directed in the order under review, could result in a fundamentally unfair situation for defendant. One attorney representing defendant would argue that he acted in self-defense, while the other would seek to establish at the same time that the attack *84 never occurred but was a delusion on the part of defendant. Cf. United States v. Taylor, 510 F.2d 1283, 1288 (D.C. Cir.1975). See, also, Contee v. United States, 410 F.2d 249, 250 (D.C. Cir.1969); Holmes v. United States, 363 F.2d 281 (D.C. Cir.1977). In the unique circumstances here present, we think that the issues must be bifurcated at the trial, with the insanity issue to be tried first, particularly since it would have been, in fact, interposed by the trial judge. At the close of the proofs on that issue, it will be submitted to the jury, with appropriate instructions, for a determination of whether defendant was insane at the time the homicide was committed. If the jury finds that he was, then the trial judge would direct the entry of a judgment of acquittal on the ground of insanity and dispose of the case as provided for under N.J.S.A. 2C:4-7. If the jury finds that defendant was not insane at the time the homicide was committed, then the trial would proceed on the general issue of defendant's guilt or innocence of the crimes charged, including the issue of self-defense.
So much of the order of February 8, 1979 as adjudges defendant competent to stand trial or otherwise conflicts with our opinion is reversed. The matter is remanded for further proceedings consistent with the foregoing.
Jurisdiction is not retained.
NOTES
[1] Counsel for the Division of Mental Health Advocacy appears solely on the issue of the trial court's imposition of the insanity defense.