THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
KEVIN GETTINGS, Defendant-Appellant.

Fourth District   No. 4—88—0025

Opinion filed November 3, 1988.

Daniel D. Yuhas and Jane Raley, both of State Appellate Defender's Office, of Springfield, for appellant.

Craig H. DeArmond, State's Attorney, of Danville (Kenneth R. Boyle,

Robert J. Biderman, and J. A. C. Knuppel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

Defendant Kevin Gettings appeals his convictions of one count of aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4) and one count of armed violence (Ill. Rev. Stat. 1985, ch. 38, par. 33A—2). Defendant contends the trial court erred in accepting his waiver of the insanity defense without inquiring as to whether his waiver was intelligent and voluntary. Defendant further argues that the trial court erred in entering judgment on both counts and on battery when only one physical act occurred. As to both issues, we agree.

Defendant was charged on October 20, 1986, by information with aggravated battery (Ill. Rev. Stat. 1985, ch. 38, par. 12—4) and armed violence (Ill. Rev. Stat. 1985, ch. 38, par. 33A—2). Both offenses arose from an incident which occurred in the early morning on October 17, 1986. Defendant beat another man with a wooden stick allegedly because the man had stolen defendant's three-piece suit. The man suffered a fracture to his nose and in the area of his left eye.

On February 18, 1987, on defendant's petition, the trial court ordered a full psychiatric examination of the defendant to determine whether he was competent to stand trial and whether he was legally insane at the time of the incident. The psychiatrist found that defendant suffered from paranoid schizophrenia, chronic organic brain disorder, chronic alcohol and drug abuse, and antisocial personality disorder. Due to these mental defects, the psychiatrist concluded that the defendant was legally insane at the time of the incident. Defendant was found competent to stand trial.

Defendant's jury trial took place on October 8, 1987. Prior to this time, the record reflects that the defendant actively participated with his attorney in various pretrial proceedings. On three occasions, defendant's counsel, at defendant's request, filed motions for a continuance and dismissal of the action. Defendant personally requested copies of court transcripts, a change of venue, appointment of new counsel, and challenged the court record regarding the defendant's bond reduction hearing.

On the day of the defendant's trial, defendant's counsel advised the court in chambers that he had spoken with the defendant at great length about the defense of insanity or diminished capacity and a possible plea of guilty but mentally ill. With regard to all, defendant had "emphatically" instructed his counsel not to pursue them.

The court accepted the waiver and proceeded with the trial without further discussion of the matter.

At the close of the State's evidence, the defense rested without putting on any evidence. Following deliberations, the jury found defendant guilty of battery, aggravated battery, and armed violence. The court entered judgment on all three verdicts and referred the matter to the probation office for a presentence report.

A probation officer conducted a presentence interview with the defendant on October 13, 1987. Defendant told the probation officer that the victim had poisoned him by putting cyanide in a beer he drank at the time of the incident. He further stated that the incident was a "hostage situation" where the others present at the time of the incident were trying to get some money back which defendant had won from them in gambling. Defendant admitted that he punched the victim three times and bruised his cheek but he was told to do it by a gunman pointing a gun at his head. This gunman told defendant if he did not do it, they would kill his child. Defendant also stated that he was working on a masters in sociology with an interest in a doctorate of psychiatry and was working on a thesis on limbiatic behavior.

Defendant also told the probation officer that he had received congressional medals for valor, honor, and bravery; that he is a general in the Army's special general operations; that he received cars from England; that he had been knighted in England and owned a home in St. Joseph, Illinois, worth $2 billion. After investigation, the probation officer determined that defendant had no children or a record of finishing high school and was discharged from the Army after four months of service due to fraudulent entry.

Defendant's motion for a new trial was denied. On December 11, 1987, defendant was sentenced on the armed violence conviction to six years' imprisonment at the Department of Corrections.

■ Defendant contends that before the court accepted his waiver of the insanity defense, the court should have first ascertained and ensured that defendant's decision was intelligent and voluntary. Further, defendant argues that such an inquiry is necessary because a finding of competence to stand trial does not lead directly to a finding of the capability to intelligently and voluntarily waive the insanity defense. The State urges that competence to stand trial includes the ability to waive the insanity defense. Since the defendant was found competent to stand trial, the State maintains that the insanity defense was properly waived.

Defendant's appeal presents a case of first impression for this

court. That is, when the court is advised by defendant's counsel that a competent defendant had decided to waive a viable insanity defense, over defense counsel's objection, must the court ascertain whether the waiver is voluntary and intelligent before it is accepted or can the trial judge simply accept the waiver without conducting an inquiry with the defendant? We have reviewed the reported cases from those jurisdictions which have addressed this issue and are persuaded by the District of Columbia court's conclusion in *Frendak v. United States* (D.C. App. 1979), 408 A.2d 364, that an inquiry is required.

In *Frendak*, the defendant was charged with first-degree murder and carrying a pistol without a license. After a series of psychiatric examinations, the defendant was found competent to stand trial although two doctors concluded she was suffering from a mental illness at the time of the crime involved. The defendant refused to raise the insanity defense but the trial court imposed the defense over her objection. In imposing the defense, the court relied on the strength of the evidence to support the defense and found the defense would, in all likelihood, succeed. Defendant was found not guilty by reason of insanity.

On appeal, defendant in *Frendak* argued that the court's focus, when faced with a defendant who waives a viable insanity defense, should be on the defendant's mental state at the time of waiving the defense and not on the strength of the evidence of insanity at the time of the crime involved. The court agreed and set out detailed procedures for trial judges to follow.

In sum, if a competent defendant desires to waive an insanity defense, "the trial judge must conduct an inquiry designed to ensure that the defendant has been fully informed of the alternatives available, comprehends the consequences of failing to assert the defense, and freely chooses to raise or waive the defense." (*Frendak*, 408 A.2d at 380.) In some instances, the inquiry may be limited to advising the defendant of the consequences of the insanity plea and being assured that the defendant understands these consequences by questioning the defendant about his reasons for rejecting the defense. In other cases, the inquiry would be expanded if there remains some doubt as to defendant's understanding and whether the choice to waive the defense is voluntary and intelligent. In the cases where the court finds the defendant is capable of making a voluntary and intelligent waiver, the defendant's decision must be respected by the court.

The State, in its brief, and at oral argument, urges that compe-

tence to stand trial as set forth in section 104—10 of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 104—10) includes the competence necessary to waive an insanity defense. Therefore, a competent defendant is presumed to be capable of waiving an insanity defense. Whether or not these competence levels are in fact the same is not salient to our conclusion that an inquiry should have been conducted in this case and, therefore, we decline to address this issue.

Unlike *Frendak* and several other cases which have held an inquiry is required (see *State v. Jones* (1983), 99 Wash. 2d 735, 664 P.2d 1216; *State v. Khan* (1980), 175 N.J. Super. 72, 417 A.2d 585), the present case involves several additional factors that we find compel our decision to remand for an inquiry. The defendant's decision here was contrary to his attorney's advice. There is nothing in the record to indicate that the defendant knew he could avail himself of the insanity defense. The only indication in the record that the defendant was told of the defense is his attorney's statement to the trial judge that they (attorney and defendant) had discussed this issue. In addition, the court was advised by defense counsel of the waiver in the judge's chambers, outside of the defendant's presence. While counsel stated that he advised defendant of the availability of this defense and other possible pleas and defenses and discussed all these with the defendant "at length," we have nothing in the record regarding what counsel told his client. The record also does not reflect defendant's reason for waiving the defense.

It is a fundamental precept in criminal law that responsibility for a criminal act cannot be charged to one who cannot, by reason of mental disease or defect, control his conduct. (*Whalem v. United States* (D.C. Cir. 1965), 346 F.2d 812 (en banc), *cert. denied* (1965), 382 U.S. 862, 15 L. Ed. 2d 100, 86 S. Ct. 124.) An insanity defense protects an insane person from being held culpable for his actions. Thus, as noted by the court in *Frendak*, "a defendant who chooses to forego an insanity defense relinquishes important safeguards intended to protect persons who are not legally responsible for their acts from punishment." (*Frendak*, 408 A.2d at 378.) We agree with the *Frendak* court's discussion of some of the reasons why a defendant may choose to forego this defense, and we note that, in this case, the defendant may have considered one of these reasons in his decision not to raise the insanity defense. However, the fact remains that the record before us is devoid of any facts that would assure the court that the defendant here knowingly and intelligently waived his defense. We believe that such assurances are necessary before the

court accepts a waiver of this defense. An inquiry would include a short discussion between the judge and the defendant, addressing such issues as: (1) whether the defendant has been advised of the availability of the defense; (2) what reason the defendant has for waiving the defense; (3) whether defendant understands the consequences of waiving an insanity defense; and (4) whether defendant understands the consequences of a successful insanity defense.

■ As to defendant's first issue, we agree the record does not show that defendant did knowingly and intelligently waive the insanity defense. Therefore, we vacate the judgment and remand this case for the court to conduct an inquiry with the defendant. If the court determines that the defendant's waiver was knowing and intelligent, then the court shall reenter the judgment of conviction of armed violence and resentence the defendant. If the court determines that the waiver was not knowing and intelligent, then the court shall conduct a new trial for the defendant.

■ As to defendant's second issue, both parties agree and our research reveals that the circuit court erred in entering judgment against the defendant for battery, aggravated battery, and armed violence. Where one physical act involves more than one offense, one being the lesser included, judgment may be entered on only one offense. (*People v. Donaldson* (1982), 91 Ill. 2d 164, 435 N.E.2d 477.) Therefore, the judgments of battery and aggravated battery against the defendant are vacated.

In summary, the defendant's conviction for armed violence is vacated and this cause is remanded for proceedings consistent with this opinion. The judgments against the defendant for battery and aggravated battery are vacated.

Vacated and remanded with directions.

KNECHT and SPITZ, JJ., concur.