73 A.3d 421

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. ROBERT HANDY, DEFENDANT-APPELLANT.

Argued November 28, 2012—Decided September 9, 2013.

336

*Judith B. Fallon,* First Assistant Deputy Public Defender, argued the cause for appellant (*Joseph E. Krakora,* Public Defender, attorney).

*Ashlea D. Thomas,* Deputy Attorney General, argued the cause for respondent (*Jeffrey S. Chiesa,* Attorney General of New Jersey, attorney).

Justice HOENS delivered the opinion of the Court.

Defendant Robert Handy was charged with the 2004 murder of his uncle, Arthur Cooper. Pre-trial proceedings, during which the court ruled on defendant's competence to stand trial and fixed the manner and order in which he would be tried, have framed the issues that are now before this Court.

The first of the issues concerned whether defendant was competent to stand trial. Although experts conducted multiple evaluations of defendant for the purpose of determining his competency and although two experts testified at a competency hearing, counsel did not engage in a debate about defendant's general competency. Instead, counsel essentially agreed that defendant was competent to stand trial but that he was nonetheless not competent to waive an insanity defense.

The second dispute, which arose as an adjunct to the debate about defendant's competency, related to the manner and order in which the trial would proceed. Defendant desired to rely on self defense, but the evidence adduced in the competency hearing raised the strong possibility that he might be found not guilty by reason of insanity should that defense, which counsel asserted he was not competent to waive, be pursued. Faced with the dilemma presented by those alternative defenses, the trial court first determined that it was bound by existing appellate-level precedent

governing the mechanics of a murder trial in which defendant raises these two defense theories. *See State v. Khan,* 175 *N.J.Super.* 72, 78–84, 417 *A.*2d 585 (App.Div.1980). As a result of the trial court's evaluation of that binding precedent, it concluded that the trial would be bifurcated and that the insanity defense would be tried first.

The first phase of the bifurcated trial, during which defendant consented to be tried without a jury, concluded with a finding that defendant was not guilty by reason of insanity. Thereafter, defendant was committed to a psychiatric facility for treatment, *see N.J.S.A.* 2C:4–8(b)(3), and was to be afforded regular periodic reviews in accordance with this Court's directives, *see State v. Krol,* 68 *N.J.* 236, 263–67, 344 *A.*2d 289 (1975). There was, therefore, no trial during which defendant was given the opportunity to present his claim that he committed the murder in self defense.

Throughout the proceedings, defendant has asserted that he should have been permitted to proceed first to trial on his self-defense claim and that requiring him to be tried in a bifurcated proceeding with the insanity defense being adjudicated first deprived him of his constitutional rights.

The Appellate Division, in a published opinion, declined to follow the approach adopted by the earlier appellate panel in *Khan, supra,* that the trial court had concluded was binding upon it, *see State v. Handy,* 421 *N.J.Super.* 559, 565, 25 *A.*3d 1140 (App.Div. 2011). The appellate court held instead that "a defendant who wishes to present a substantive defense based upon at least some evidence, or who otherwise wishes to put the State to its burden of proving the elements of the offense beyond a reasonable doubt, should not be required to first submit to a trial restricted to the issue of insanity." *Ibid.*

The appellate panel therefore concluded that defendant had been deprived of his constitutional rights by being precluded from pursuing the defense that, had it been successful, would have resulted in an acquittal rather than, as resulted from the finding of

not guilty by reason of insanity, commitment for treatment. *Ibid.* However, the appellate court also concluded that because of the unusual procedural context in which the dispute arose, it could not simply remand the matter for a new trial during which defendant's self-defense theory would be heard. *Id.* at 606–09, 25 *A.*3d 1140. In an effort to craft a remedy that would vindicate defendant's constitutional rights, the Appellate Division offered defendant the opportunity to be retried in a bifurcated proceeding in which the two defense theories would be heard sequentially by a single jury. In such a retrial, the self-defense claim would be tried first, with the presentation of an insanity defense thereafter if needed. *Id.* at 612–13, 25 *A.*3d 1140.

The petition for certification, together with the supplemental briefing that followed, raises for our consideration the continued viability of the bifurcated, sequential trial approach in cases involving both a substantive defense and an insanity defense. Our consideration of the arguments raised before us on this issue leads us to reject any continued utilization of the bifurcated, sequential proceeding approach, either as announced in *Khan* or as modified by the Appellate Division, in favor of a unitary trial approach in which the interrelated claims of insanity and self defense will be tried together.

In light of the unusual procedural posture in which this matter has come before this Court, however, we remand this matter for a more limited purpose than the one directed by the Appellate Division. We conclude that the constitutional error can be fully and effectively remedied by providing defendant with the opportunity, which he sought but was denied in the initial trial, to continue in a second phase of his trial during which he may present his self-defense claim. We therefore direct that defendant be afforded that second phase of his trial for the purpose of presenting his self-defense theory for adjudication in place of the new trial on all of his potential defenses offered to him as a remedy by the Appellate Division.

I.

The facts and the procedural history that serve as the background for our consideration of the issues before us on appeal are set forth at length in the published decision of the Appellate Division. *Id.* at 566–79, 25 *A.*3d 1140. We therefore need only summarize that which is essential for clarity of our analysis.

On January 13, 2004, police were summoned to a residence that defendant shared with his uncle, Arthur Cooper, and others, by concerned neighbors who heard screaming. *Id.* at 566–67, 25 *A.*3d 1140. The police found Cooper lying outside of the residence in a pool of blood, and he was pronounced dead on arrival at a local hospital. *Id.* at 567, 25 *A.*3d 1140. An autopsy revealed that he died from a single stab wound that penetrated his heart. *Id.* at 568, 25 *A.*3d 1140.

While the police were on the scene, defendant arrived and, when asked by the investigating officer when he had last seen his uncle, defendant said that "prior to [defendant] leaving to do his laundry [his uncle] hit him with [a] pipe[, and that defendant] . . . immediately turned around and cut him, stabbed him." *Ibid.*

During their investigation of the scene, police found a pipe that had the words "King Reveal" marked on it. *Id.* at 567, 25 *A.*3d 1140. The same words were tattooed on his uncle's body. *Ibid.* Defendant thereafter offered several more statements to the police, most of which described his uncle's assault on him with the pipe and all of which included defendant's assertion that the stabbing was in self defense. *Id.* at 568–69, 25 *A.*3d 1140. In addition, defendant made statements to the police about his uncle's alleged involvement in drug-related criminal activities. *Id.* at 570, 25 *A.*3d 1140. Forensic evidence corroborated his uncle's recent cocaine ingestion, *id.* at 568, 25 *A.*3d 1140 and criminal records revealed his uncle's arrest, one week before his death, for a drug offense, *id.* at 570, 25 *A.*3d 1140.

Prior to killing his uncle, defendant had a history of psychiatric problems for which he had received in-patient treatment at several

hospitals. *Id.* at 576, 25 *A.*3d 1140. Of particular relevance to this appeal, evidence derived from those hospitalizations reveals that defendant suffers from delusions about having been sexually and physically assaulted while he was hospitalized. *Id.* at 572, 25 *A.*3d 1140. Moreover, the focus of defendant's delusions is a belief that throughout his hospital treatment he was beaten for hours, raped, and tortured in his room by hundreds of individuals, including his attorney, one of the judges who had presided over his case, and his physicians. *Ibid.*

Because of these delusions, defendant expressed fear that he is always in danger of being physically or sexually assaulted. During his psychiatric treatment, defendant created an extensive written record in which he detailed these assaults. As part of his writings on the subject, defendant made a handwritten list of people whom he believed had sexually assaulted or harmed him and which also included individuals whom he believed he could not trust. Although there were approximately forty names on the list, his uncle's name was first. *Id.* at 577, 25 *A.*3d 1140.

On August 22, 2003, nearly five months prior to the stabbing death of his uncle, defendant was found in Manhattan, where, because of his bizarre behaviors, he was taken to St. Luke's–Roosevelt Hospital Center's Comprehensive Psychiatric Emergency Program for an evaluation. *Id.* at 566, 25 *A.*3d 1140. Physicians there, believing that defendant was suffering from paranoid schizophrenia, admitted him for treatment. *Ibid.*

Defendant remained at that hospital until October 3, 2003, at which time he was deemed well enough to be released. He was discharged with instructions to continue his treatment and take medication that had been prescribed. Defendant promised to follow those instructions and he then returned to live with his family in New Jersey. *Ibid.* Notwithstanding those promises, defendant has remained firmly of the belief that there is nothing wrong with him. *Id.* at 576, 25 *A.*3d 1140. As a result, at some point prior to the day on which his uncle was killed, defendant stopped taking his medication. *Id.* at 578, 25 *A.*3d 1140.

Following his arrest, defendant was transferred to the Ann Klein Forensic Center (Ann Klein) where he was forcibly medicated, and where, it was reported, his mental status improved. *Id.* at 571, 25 *A.*3d 1140. Records maintained by clinical staff at Ann Klein include a report that linked the medication to an observation that defendant had stopped incorporating new individuals into his previously held delusional beliefs about assaultive attacks.

Defendant's competency was evaluated on several occasions, with different professionals reaching different conclusions. *Id.* at 571–73, 25 *A.*3d 1140. Relevant to this appeal, Susan Chung, Ph.D., a clinical psychologist who evaluated defendant at Ann Klein, reported that defendant suffered from paranoid delusions, including claims that his attorney and a judge were among the people who abused him at the hospital. *Id.* at 572, 25 *A.*3d 1140. Nevertheless, Dr. Chung concluded that defendant was competent to stand trial. *Ibid.* She observed that defendant "was oriented to person, place, date, and time, . . . possessed a factual and rational understanding of the legal process and understood the different roles of the judge, the public defender, and the prosecutor." *Ibid.* According to her expert report, Dr. Chung found that defendant "did not exhibit any delusional beliefs related to his attorney . . . during the current evaluation[.]" Dr. Chung's report concluded that defendant was "likely to remain competent [to stand trial] as long as he remain[ed] compliant with prescribed treatment[,]" an opinion she echoed during the hearing. *Id.* at 573, 25 *A.*3d 1140.

Roger M. Harris, M.D., who had been retained by the defense to evaluate defendant's competency, disagreed with Dr. Chung. His opinion was that defendant would not be competent to stand trial unless and until he was free from his delusions. *Ibid.* Dr. Harris reported finding during his evaluation that defendant still had persistent delusions and that these delusions were "the most problematic" symptom for his medication to address. *Ibid.* Dr. Harris's observations also led him to offer a somewhat different opinion than that given by Dr. Chung concerning defendant's view of his attorney. *Ibid.* Although conceding that defendant under-

stood his lawyer's role, Dr. Harris reported that defendant continued to harbor beliefs that his attorney was among the participants in the assaults he believed he had endured while hospitalized. Dr. Harris concluded that the prognosis was "poor" that defendant would ever be free of the delusions. *Ibid.*

During the competency proceedings before the trial court, the State argued and defense counsel, notwithstanding Dr. Harris's opinion, did not contest, that defendant was competent to stand trial. *Id.* at 573–74, 25 *A.*3d 1140. However, the State also asserted, and defense counsel agreed, that even though defendant was competent to stand trial, he was not competent to waive the insanity defense. *Id.* at 574, 25 *A.*3d 1140. The State and defense counsel disagreed only about the implications of that conclusion.

Both counsel agreed that the two defenses, insanity and self defense, could not be tried in a single, unified proceeding. *Id.* at 574–75, 25 *A.*3d 1140. In part, that view relied on the recognition that they and the trial court were bound by the decision in *Khan, supra,* but they also expressed concerns about jury confusion and prejudice to defendant if the two defenses were tried together. *Ibid.*

The State argued that conducting a trial following the *Khan* bifurcation approach, in which insanity would be tried first, would ensure that the fact finder would not be confused between the insanity defense and the self-defense claim that defendant sought to assert. Counsel for defendant, however, argued that the self-defense claim should be tried first, observing that if defendant prevailed on that substantive claim, no further proceedings would be necessary. *Id.* at 574, 25 *A.*3d 1140.

After hearing and considering these arguments, the trial court announced several findings and conclusions. The court ruled that defendant was competent to stand trial as long as he continued to take his medications; that he was nonetheless not competent to waive the insanity defense; that the *Khan* bifurcated trial procedure should be utilized; and that the insanity defense would be tried first because it related to a substantive element of the

offense rather than to an affirmative defense defendant sought to interpose. *Id.* at 575, 25 *A*.3d 1140. Defendant's motion for leave to pursue an interlocutory appeal on the manner and order of trial was denied by the Appellate Division. *Ibid.* After defendant waived a trial by jury on the bifurcated insanity defense, the matter proceeded before the court. *Ibid.*

The trial court conducted a trial that spanned three days, during which the State offered its proofs, focusing on defendant's statements to the police, as well as the physical and forensic evidence of the murder. *Id.* at 575–76, 25 *A*.3d 1140. Dr. Harris, who had testified on defendant's behalf at the competency hearing, was the only witness for the defense. *Id.* at 576, 25 *A*.3d 1140. He testified about his examination of defendant, described defendant's delusions, and opined that defendant was "floridly psychotic" and delusional at the time of the murder. *Id.* at 576–77, 25 *A*.3d 1140. Consistent with the legal definition of insanity, *N.J.S.A.* 2C:4–1, Dr. Harris offered his opinion that although "defendant understood the nature and quality of his actions [and was aware that he had stabbed his uncle], . . . he did not appreciate" the wrongfulness of his act. *Id.* at 577, 25 *A*.3d 1140.

At the close of the evidence, counsel for defendant reiterated that defendant preferred to be tried on his self-defense theory rather than on the insanity defense. *Id.* at 578, 25 *A*.3d 1140. The State urged the trial court to adjudicate defendant not guilty by reason of insanity and argued generally that, were the court to review the evidence uncovered during the investigation, it would conclude that his self-defense theory was "untenable." *Ibid.*

The trial court found defendant not guilty by reason of insanity. The court included in its comments a few observations concerning the self-defense theory, but, because that theory had not been tried, the court made no findings and reached no conclusions about that defense. *Ibid.* Instead, the court entered a final judgment of not guilty by reason of insanity and committed defendant for treatment. *See N.J.S.A.* 2C:4–8(b)(3). The proceedings therefore were terminated without any further opportunity for defendant to

be adjudicated on the basis of his preferred theory that he had committed the murder in self defense. *See Handy, supra,* 421 *N.J.Super.* at 579, 25 *A.*3d 1140.

On appeal, defendant asserted that the denial of his request that the self-defense theory be tried first deprived him of his constitutional rights. *Ibid.* More particularly, he challenged the continuing validity of the *Khan* decision, contending that its bifurcation and mandatory sequencing approach was unconstitutional and that it was inconsistent with the manner of trying like defenses in other jurisdictions. *Ibid.* He asked that the matter be remanded to the trial court and that he be permitted to proceed with a trial on his self-defense theory. *Id.* at 580, 25 *A.*3d 1140.

The State contended that the bifurcation approach utilized in *Khan* was neither unconstitutional nor inappropriate and that defendant was not entitled to a remand for trial on the self-defense claim. *Ibid.*

In its published opinion, the Appellate Division departed from its prior decision in *Khan* and held that a defendant who chooses to either present a substantive defense or hold the State to its burden of proving every element of the offense must not be required to first submit to a trial on an insanity defense. *Id.* at 597–98, 600, 25 *A.*3d 1140.

We need not recite at length the scholarly explanation that Judge Sabatino, writing for the Appellate Division, offered in support of the conclusion that the *Khan* approach should no longer be followed. *See id.* at 587–98, 25 *A.*3d 1140. Rather, we need only comment that, based on his careful and comprehensive analysis, Judge Sabatino articulated three reasons that motivated the appellate panel to depart from continued adherence to the bifurcated sequence set forth in *Khan. See id.* at 587–97, 25 *A.*3d 1140.

First, as Judge Sabatino explained, *Khan* both conflicted in some ways with then-existing law and is contrary to several aspects of the New Jersey Criminal Code, the implementation of

which spanned the timeframe when *Khan* was being considered and decided. *Id.* at 587–92, 25 *A.*3d 1140.

Second, as he observed, the *Khan* court had relied on a decision from the District of Columbia, *see Frendak v. United States,* 408 *A.*2d 364, 379–81 (D.C.1979), which, in turn had relied on a federal decision, *see Whalem v. United States,* 346 *F.*2d 812, 818–19 (D.C.Cir.), *cert. denied,* 382 *U.S.* 862, 86 *S.Ct.* 124, 15 *L.Ed.*2d 100 (1965), which has since been repudiated, *see United States v. Marble,* 940 *F.*2d 1543, 1547 (D.C.Cir.1991), thus undermining the *Khan* court's reasoning, *see Handy, supra,* 421 *N.J.Super.* at 585, 592–95, 25 *A.*3d 1140.

Finally, Judge Sabatino pointed out that, although other states require a defendant raising both insanity and a substantive defense to present those defenses in a bifurcated proceeding, in general, it is the substantive offense that is tried first. *Id.* at 595, 25 *A.*3d 1140. As he explained, the result of this survey of proceedings in other courts is that, in the more than thirty years since *Khan* was decided, its approach has not been adopted elsewhere. *Id.* at 595–97, 25 *A.*3d 1140.

The Appellate Division, although continuing to conclude that the defenses should be tried in a bifurcated proceeding, therefore declined to follow the sequence mandated by *Khan. Id.* at 597–98, 25 *A.*3d 1140. Instead, the appellate panel held that a court should not require a defendant to present an insanity defense during the first phase of a bifurcated trial. *Id.* at 597–98, 600, 25 *A.*3d 1140. Applying its reasoning to defendant, the appellate court then concluded that defendant had been "manifestly prejudiced" because the trial court had not allowed him to offer evidence of self defense in a plenary trial. *Id.* at 604, 25 *A.*3d 1140. Because a successful self-defense claim would result in an acquittal, whereas the judgment of not guilty by reason of insanity resulted in defendant's continued commitment and thereby deprived him of his liberty, the panel found merit in defendant's constitutional challenge. *See id.* at 604–05, 25 *A.*3d 1140.

Having reached that conclusion, the appellate court addressed the remedy that would be appropriate in light of the debate between the parties concerning the double jeopardy implications of any further trial proceedings. *Id.* at 606–09, 25 *A*.3d 1140. Again, we need not recite at length Judge Sabatino's thorough analysis of the arguments raised by the parties and of the constitutional implications thereof. It is instead sufficient for purposes of this opinion to note that, writing for the Appellate Division, he concluded that defendant would need to be offered the opportunity to be tried anew on all theories. *Id.* at 607, 609, 25 *A*.3d 1140. Offering defendant such an opportunity, however, required that defendant make an election. *Id.* at 609, 25 *A*.3d 1140.

In light of the conclusion that defendant would be permitted to elect whether or not to proceed with a retrial, the appellate panel also delineated the procedures that would govern the proceedings on remand. *Id.* at 609–14, 25 *A*.3d 1140. First, the court required defendant to submit to a new competency hearing. *Id.* at 609, 25 *A*.3d 1140. Second, it directed that, if defendant is found competent to stand trial, the trial court should ascertain from him whether he chooses to waive his double jeopardy protections. *Ibid.* The panel further directed that, if defendant declines to do so, then the insanity-based acquittal will remain valid and defendant will not be able to proceed with a plenary trial on the merits, including a trial on defendant's self-defense claim. *Id.* at 610, 25 *A*.3d 1140.

The appellate court directed that if, in the alternative, defendant waives his double jeopardy rights, then the trial court should vacate the judgment of not guilty by reason of insanity and grant a new trial on all theories. *Id.* at 609–10, 25 *A*.3d 1140. In that event, the panel ordered that any new trial on remand would be bifurcated and the parties would present evidence on the merits of the substantive offense and on self defense first. *Id.* at 612, 25 *A*.3d 1140. If that trial does not end with defendant's acquittal, it would be followed by a second phase, before the same fact-finder,

to consider whether defendant is not guilty by reason of insanity, during which the State would be permitted to contest that defense. *Id.* at 612–13, 25 *A.*3d 1140. Finally, the Appellate Division acknowledged that, on remand, defendant could choose to waive a sequenced trial. *Id.* at 613, 25 *A.*3d 1140.

We granted defendant's petition for certification. 209 *N.J.* 99, 35 *A.*3d 682 (2012).

## II.

Defendant's petition for certification focused on the remedy fashioned by the Appellate Division, asserting that requiring him to surrender his not guilty by reason of insanity adjudication as a prerequisite to being permitted to proceed to trial on his self-defense claim would violate his constitutional protection against double jeopardy.

In a supplemental brief, defendant elaborated on his arguments. First, he contended that the insanity defense and self defense are inherently inconsistent theories that must be tried in a bifurcated proceeding in order to avoid jury confusion. Second, he asserted that the trial court's decision to require him to be tried first on insanity violated his constitutional rights because it deprived him of the right to proceed on his preferred theory of self defense. Third, he argued that any effort to retry him, either in the manner contemplated by the Appellate Division or in any other fashion, would violate double jeopardy principles and thus would be unconstitutional. For these reasons, he contended that the only remedy that will cure the violation of his constitutional rights and prevent further constitutional deprivations is vacating the conviction of not guilty by reason of insanity, dismissing the indictment, and ordering his immediate release from commitment.

The State, in supplemental briefing, argued that the trial court did not err by following the *Khan* bifurcation procedure, but it urged this Court to abandon bifurcation in favor of unitary trials in the future.

Moreover, in response to defendant's contentions, the State asserts that, should this Court conclude that defendant is entitled to a trial of his self-defense theory on remand, it would not violate his double jeopardy protections because the trial would simply be a continuation of the previously conducted, bifurcated proceeding.

Finally, notwithstanding the reasoning and analysis that undergirds the remedy crafted by the Appellate Division, the State represented that it would not require defendant to surrender the insanity verdict as a prerequisite to being tried on his self-defense theory.

## III.

There can be no doubt that the bifurcated trial and sequencing approach crafted by the Appellate Division in 1980, and embodied in its decision in *Khan*, is no longer viable and that it should no longer be utilized by our courts. In that respect, we are fully in accord with the reasoning and analysis expressed by Judge Sabatino in the decision he wrote on behalf of our Appellate Division. The implications of our agreement that the *Khan* approach should be disavowed, however, reach well beyond the particular defendant now before this Court and the peculiar constitutional conundrum that his circumstances presented to the Appellate Division in its effort to fashion a remedy for him. We therefore overrule *Khan* and direct that, in the future, trials that involve both a substantive defense and an insanity defense must be unitary proceedings. We separately address the remedy to be afforded defendant in light of the procedural posture in which this appeal has reached us.

As we see it, there are three separate questions that the record on appeal and the supplemental briefs filed with this Court call upon us to decide. First, we are charged with establishing the framework that will govern trials in the future in which both a substantive defense and the defense of not guilty by reason of insanity are presented. Second, in light of the trial court's finding that defendant was competent to stand trial, we are called upon to

consider the way in which his preference to be tried only on the substantive defense was evaluated. Third, we are required to address the remedy that we conclude is due defendant in order to vindicate his constitutional rights.

## A.

We begin with our consideration of the appropriate framework for the future conduct of trials in which both substantive defenses and the defense of not guilty by reason of insanity are implicated.

As to this question, the State argues that we should reject any continued use of bifurcated proceedings, contending that utilizing a unitary trial approach would best protect the constitutional rights of defendants while ensuring that the finder of fact be apprised of all relevant aspects of the proofs. Defendant asserts that the appellate court correctly concluded that the interests of justice demand that there be a bifurcated proceeding when both substantive defenses and the insanity defense are raised, and that this Court should fully endorse that approach.

Both the United States Constitution, *U.S. Const.* amend. VI, and our Constitution, *N.J. Const.* art. I, ¶ 9, guarantee every defendant charged with a crime the right to be tried by a fair and impartial jury. *See State v. Collier,* 90 *N.J.* 117, 122, 447 *A.*2d 168 (1982) (describing right to trial by jury as "hallowed"); *State v. Ingenito,* 87 *N.J.* 204, 210, 432 *A.*2d 912 (1981) (referring to right as "one of the most cherished" and tracing its roots back to the Magna Carta). Moreover, as we have held, both the United States Constitution and our New Jersey Constitution "guarantee criminal defendants 'a meaningful opportunity to present a complete defense.'" *State v. Garron,* 177 *N.J.* 147, 168, 827 *A.*2d 243 (2003) (quoting *Crane v. Kentucky,* 476 *U.S.* 683, 690, 106 *S.Ct.* 2142, 2146, 90 *L.Ed.*2d 636, 645 (1986)), *cert. denied,* 540 *U.S.* 1160, 124 *S.Ct.* 1171, 157 *L.Ed.*2d 1204 (2004).

█ Neither the federal nor our state constitution, however, gives defendants the right to have a trial proceed in two stages. *See Spencer v. Texas,* 385 *U.S.* 554, 567–68, 87 *S.Ct.* 648, 655–56, 17 *L.Ed.*2d 606, 616–17 (1967); *State v. Middleton,* 143 *N.J.Super.* 18, 23, 362 *A.*2d 602 (App.Div.1976) (concluding that trial of certain persons charge should have been severed from trial of other charges notwithstanding fact that unified trial did not offend due process), *aff'd o.b.,* 75 *N.J.* 47, 48, 379 *A.*2d 453 (1977). On the contrary, trials are ordinarily unitary proceedings in which all claims and all parties are adjudicated together, even when a defendant raises defenses that are inconsistent. *See State v. Haseen,* 191 *N.J.Super.* 564, 566–67, 468 *A.*2d 448 (App.Div.1983) (concluding that holding in *Khan* did not mandate that trial be bifurcated when defenses of insanity and alibi were interposed).

The question before us is whether the circumstances in which a defendant seeks to raise both a substantive defense and the defense of not guilty by reason of insanity demand that we depart from the ordinary unified trial approach in favor of a bifurcated proceeding of one version or another. We have identified only a few circumstances [1] in which trials must be bifurcated, each time doing so because of the extraordinary and unavoidable prejudice that would otherwise be visited on the defendant.

For example, we have held that when a person is charged with both unlawful possession of a weapon and unlawful possession of a weapon by a convicted felon, the trial must proceed in two stages so as to protect the defendant's right to a fair trial. *State v.*

---

[1] We do not consider the bifurcation proceedings that were formerly mandated in capital cases, *see State v. Reddish,* 181 *N.J.* 553, 635–36, 859 *A.*2d 1173 (2004); *State v. Biegenwald,* 126 *N.J.* 1, 43–44, 594 *A.*2d 172 (1991), *superseded by statute on other grounds, N.J.S.A.* 2C:11–3c(4)(a) (codifying *L.* 1985, *c.* 178), *as recognized in State v. Haliski,* 140 *N.J.* 1, 12, 656 *A.*2d 1246 (1995), to be germane to our analysis and therefore do not address their constitutional underpinnings. Nor do we address the circumstances in civil litigation in which bifurcation is required. *See, e.g., Herman v. Sunshine Chem. Specialities, Inc.,* 133 *N.J.* 329, 342–43, 627 *A.*2d 1081 (1993) (construing statutory bifurcation of trial of compensatory and punitive damages).

*Ragland*, 105 *N.J.* 189, 193–94, 519 *A.*2d 1361 (1986). In reaching that conclusion, we recognized that the defendant would necessarily be prejudiced in the trial of the unlawful possession charge if that jury were to be required to consider simultaneously the charge that rested on evidence of his status as a convicted felon. *Id.* at 193, 519 *A.*2d 1361. At the same time, we directed that in such cases the two charges be tried before the same jury. *Id.* at 195, 519 *A.*2d 1361. We followed that course largely for reasons of efficiency, but we also stressed that the jury be instructed in the second part of the proceeding both carefully, *id.* at 194, 519 *A.*2d 1361, and strongly, *id.* at 195, 519 *A.*2d 1361. We insisted on such instructions in order, in the context of the second phase of the proceeding, to preserve the defendant's right to be presumed innocent and to ensure that the State not be relieved of its obligation to carry its burden of proving all of the elements of the certain persons offense. *Ibid.*

We likewise have held that one charged with substantive crimes directed at a domestic violence victim as well as with the related contempt of a domestic violence restraining order is entitled to be tried on those charges in a bifurcated proceeding. *State v. Chenique–Puey*, 145 *N.J.* 334, 343, 678 *A.*2d 694 (1996). As we there concluded, it would be impossible to ensure defendant a fair trial if the jury considering the alleged crime were to hear at the same time that the putative victim previously had been granted a restraining order against defendant. *Ibid.* Much of our analysis rested on the fact that in the trial of the substantive offense, the evidence relating to the existence of a previously issued domestic violence restraining order ordinarily would be inadmissible. *Ibid.* We therefore directed that future trials involving both "charges of contempt of a domestic-violence restraining order and of an underlying criminal offense when the charges arise from the same criminal episode" should be bifurcated and tried sequentially. *Ibid.* (citation omitted).

In both of these contexts, we directed that the trials be tried in a bifurcated manner before the same trier of fact. *See ibid.;*

*Ragland, supra,* 105 *N.J.* at 195, 519 *A.*2d 1361. Moreover, when mandating that trials in these limited circumstances proceed as bifurcated trials before a single trier of fact, we were concerned with more than simply the possibility that the defendant would be disadvantaged. Instead, we considered it important to our analysis that the evidence relevant to one offense would not be admissible in the trial of the other. *See Chenique–Puey, supra,* 145 *N.J.* at 343, 678 *A.*2d 694; *Ragland, supra,* 105 *N.J.* at 194–95, 519 *A.*2d 1361.

As a result, in *Chenique–Puey,* for example, we began with the observation that joinder of offenses would be mandatory if the charges arose from the same conduct or episode, 145 *N.J.* at 340, 678 *A.*2d 694 (citing *R.* 3:15–1(b)), and that our rule governing severance would alter that on grounds of unfair prejudice to the defendant, *see id.* at 341, 678 *A.*2d 694 (citing *R.* 3:15–2(b)). Relying on our traditional analysis of the considerations relevant to a court's exercise of its discretion to grant a severance, we observed that "[c]entral to the inquiry is 'whether, assuming the charges were tried separately, evidence of the offenses sought to be severed would be admissible . . . in the trial of the remaining charges.' " *Ibid.* (quoting *State v. Pitts,* 116 *N.J.* 580, 601–02, 562 *A.*2d 1320 (1989)).

We drew a distinction between the evidentiary implications of a joint trial of the kind of charges before the Court in *Chenique–Puey* and those involved in earlier decisions in which our courts had concluded that severance was not mandated. *Ibid.* That is, we recognized that severance demands had been rebuffed in earlier opinions when the evidence would be admissible in both trials because, as a result, "defendant [would] not suffer any more prejudice in a joint trial than he would in separate trials." *Ibid.* (quoting *State v. Coruzzi,* 189 *N.J.Super.* 273, 299, 460 *A.*2d 120 (App.Div.), *certif. denied,* 94 *N.J.* 531, 468 *A.*2d 185 (1983), *appeal dismissed,* 469 *U.S.* 802, 105 *S.Ct.* 56, 83 *L.Ed.*2d 8 (1984)); *see also Pitts, supra,* 116 *N.J.* at 603, 562 *A.*2d 1320. We directed that prosecutions involving charges like those raised in *Chenique–*

*Puey* be tried separately because, in contrast, when defendant was charged both with a crime and with the consequential violation of a domestic violence restraining order, the evidence as to the existence of the restraining order would be inadmissible in the trial of the underlying crime. *Chenique–Puey, supra,* 145 *N.J.* at 343, 678 *A.*2d 694.

That analytical framework of considering admissibility of evidence in determining whether charges should be severed has been consistent. As we observed, in rejecting a defendant's assertion that the trial court erred in refusing to sever the count for stabbing one victim from the count charging him with the murder of another victim, "[e]ven if tried separately, the [stabbing] would have been admissible as probative of defendant's motive, intent, preparation, and plan to commit [the] armed robber[y]" in which the other victim was killed. *State v. Morton,* 155 *N.J.* 383, 451, 715 *A.*2d 228 (1998) (citing *N.J.R.E.* 404(b)), *cert. denied,* 532 *U.S.* 931, 121 *S.Ct.* 1380, 149 *L.Ed.*2d 306 (2001). Our review, in general, of assertions concerning prejudice flowing from trial of multiple counts therefore has been tied not merely to a generalized concern about prejudice, but instead has turned on whether the evidence of one offense would inevitably have been admissible in the trial of the other. *See id.* at 451–52, 715 *A.*2d 228.

Nor is there any basis on which to conclude that defendants are entitled to severance of counts for trial when they have elected to raise multiple, and inconsistent, defense theories. *See, e.g., State v. Delibero,* 149 *N.J.* 90, 104–05, 692 *A.*2d 981 (1997) (concluding trial court did not err in trying together, and charging jury on, defense theories of diminished capacity and insanity); *Haseen, supra,* 191 *N.J.Super.* at 566–67, 468 *A.*2d 448 (reversing order of trial court that had directed bifurcated trial of alibi and insanity defenses). Similarly, our Appellate Division has concluded that a defendant is not entitled to severance simply because he is represented by separate counsel on two indictments, and even though the attorneys gave him conflicting advice concerning the wisdom of testifying, if the evidence of the offenses charged in the two

indictments would be admissible in both trials. *State v. McBride*, 213 *N.J.Super.* 255, 264–67, 517 *A.*2d 152 (App.Div.1986).

Nothing in our decisions in *Ragland* or *Chenique–Puey* signaled an alteration in our general approach of trying multiple counts together, absent the demonstrable prejudice that arises from the circumstance in which evidence relevant to the trial of one offense would be inadmissible in the trial of the other. Applying our ordinary framework for analysis, we conclude that utilizing a unitary trial approach in cases like the one on appeal, as we do in general, is fully consistent with our jurisprudence concerning the admissibility of evidence in circumstances in which multiple claims, theories, or defenses are raised.

To conclude otherwise, as illustrated by the record before us, would be to run the risk that a jury, hearing only some of the otherwise-admissible evidence relevant to the crime, would be incapable of rendering a fair and just verdict, thus placing defendant at risk of being convicted of a substantive offense as to which the insanity defense would have applied. As this appeal illustrates, the nature of the charges and the two proffered defenses is such that we cannot expect a trier of fact to be able to fairly evaluate the evidence of one without considering, or at least being aware of, the other. The facts in this record amply demonstrate the dilemma imposed by attempting to draw a line between the evidence relevant to these defenses in any meaningful way.

█ It is a fundamental proposition that the State must prove all of the elements of a criminal offense, *see In re Winship*, 397 *U.S.* 358, 364, 90 *S.Ct.* 1068, 1072–73, 25 *L.Ed.*2d 368, 375 (1970), including that the defendant acted with the requisite intent. In this case, because the State has charged defendant with purposeful or knowing murder, *N.J.S.A.* 2C:11–3(a)(1)–(2), the State must prove that mental state beyond a reasonable doubt. As the State points out, evidence relating to defendant's intent, and his capacity to form the requisite intent, is therefore admissible. *See Delibero, supra,* 149 *N.J.* at 101, 692 *A.*2d 981.

■ At the same time, our Criminal Code excuses a defendant from criminal liability if he or she is found to have acted in self defense. *State v. Kelly*, 97 *N.J.* 178, 197–98, 478 *A.2d* 364 (1984). In claiming the protection of self defense, defendant must demonstrate that the use of force was justifiable, as defined in our Criminal Code, *see N.J.S.A.* 2C:3–4(a), and, in particular, that the use of deadly force was justifiable, *see N.J.S.A.* 2C:3–4(b)(2). When self defense is raised, however, the burden remains on the State to disprove it beyond a reasonable doubt. *State v. Perry*, 124 *N.J.* 128, 194, 590 *A.2d* 624 (1991); *Kelly, supra*, 97 *N.J.* at 200, 478 *A.2d* 364; *State v. Abbott*, 36 *N.J.* 63, 72, 174 *A.2d* 881 (1961).

■ Central to the analysis of self defense, is the statutory requirement that defendant acted with the appropriate state of mind, particularly when deadly force is used. That is, the Criminal Code provides that "[t]he use of deadly force is not justifiable ... unless the actor reasonably believes that such force is necessary to protect himself against death or serious bodily harm[.]" *N.J.S.A.* 2C:3–4(b)(2). As we have explained, the "self-defense claim therefore requires a jury (1) to discern whether the defendant had a subjective belief at the time that deadly force was necessary and then (2) to determine whether that subjective belief was objectively reasonable." *State v. Jenewicz*, 193 *N.J.* 440, 450, 940 *A.2d* 269 (2008); *accord State v. Williams*, 168 *N.J.* 323, 332–33, 774 *A.2d* 457 (2001); *Kelly, supra*, 97 *N.J.* at 199, 478 *A.2d* 364.

■ We also have explained that "[s]elf-defense exonerates a person who kills in the reasonable belief that such action was necessary to prevent his or her death or serious injury, even though this belief was later proven mistaken." *Kelly, supra*, 97 *N.J.* at 198, 478 *A.2d* 364. We have cautioned that "[b]efore resorting to deadly force, [however,] one must have both an objectively reasonable and an honest—that is, sincere—belief 'in the need to kill in self-defense.'" *State v. Rodriguez*, 195 *N.J.* 165, 172, 949 *A.2d* 197 (2008) (quoting *Kelly, supra*, 97 *N.J.* at 199, 478 *A.2d* 364).

The focus, therefore, is on whether the defendant's belief was a reasonable one and does not demand that the belief be necessarily a correct judgment. *State v. Hipplewith,* 33 *N.J.* 300, 316–17, 164 *A.*2d 481 (1960). Even so, as the Appellate Division observed, "[a] defendant's sincere, but delusional, belief in the need to use deadly force would be insufficient to sustain a claim of self-defense." *Handy, supra,* 421 *N.J.Super.* at 601, 25 *A.*3d 1140 (citing *Kelly, supra,* 97 *N.J.* at 199–200, 478 *A.*2d 364).

The analysis of the defense of not guilty by reason of insanity proceeds on a different path. As defined in our Criminal Code, insanity excuses a defendant from being responsible for the crime. That is, the insanity defense is defined as follows:

A person is not criminally responsible for conduct if at the time of such conduct he was laboring under such a defect of reason, from disease of the mind as not to know the nature and quality of the act he was doing, or if he did know it, that he did not know what he was doing was wrong. Insanity is an affirmative defense which must be proved by a preponderance of the evidence.
[*N.J.S.A.* 2C:4–1.]

In our consideration of the insanity defense, we have concluded that one who meets the test for insanity, that is, one who lacks the ability to distinguish between right and wrong, is thereby excused from criminal culpability. *State v. Worlock,* 117 *N.J.* 596, 601, 569 *A.*2d 1314 (1990) (embracing *M'Naghten* rule); *accord State v. Winder,* 200 *N.J.* 231, 249–50, 979 *A.*2d 312 (2009) (contrasting inability to distinguish between moral right and wrong with mere adherence to personal moral code). We have held that the burden is on the defendant to prove insanity, albeit by a preponderance of the evidence. *State v. Singleton,* 211 *N.J.* 157, 174, 48 *A.*3d 285 (2012) (citing *N.J.S.A.* 2C:4–1); *State v. Jimenez,* 188 *N.J.* 390, 406, 908 *A.*2d 181 (2006) (citations omitted).

This record illustrates the inherent tension between the defenses that makes dividing them impossible. The essence of defendant's preferred theory of self defense was that he was justified, in accordance with the statutory definitions, in stabbing his uncle. On its face, that might appear to be an entirely understandable approach. The record, however, is replete with evidence that the

centerpiece of defendant's delusions was his firmly held belief that others, principal among them his uncle, had repeatedly engaged in horrific acts of abuse upon him while he was hospitalized.

As a practical matter, then, in a trial in which defendant relies on self defense, most, if not all, of the evidence about defendant's delusions would necessarily be admissible in order to rebut the reasonableness of defendant's belief concerning the use of deadly force. There is simply nothing to be gained from demanding that the charges, essentially, be tried twice, particularly in light of the fact that the vast majority of the evidence relevant to defendant's delusions would be admissible in both trials.

Nor do we perceive of anything that would be gained if we were to demand that the theories be tried separately and that the self-defense theory be tried first. In that circumstance, we would necessarily need to confront what proofs could be offered as to the reasonableness of defendant's assertion that he was justified in using deadly force. As this record demonstrates, to the extent that one of the central figures in defendant's delusions about being abused in the hospital was his uncle, it would appear that much, if not all, of the evidence about those delusions would be admissible in a proceeding in which he raised only self defense.

Indeed, demanding a complete separation of the theories and forcing a trial of self defense divorced from any consideration of the insanity defense would be untenable. A half century ago, two noted scholars offered their observations about the immense difficulties posed if courts demand that there be a line drawn between evidence of insanity and evidence of another substantive defense. *See* David W. Louisell & Geoffrey L. Hazard, Jr., *Insanity as a Defense: The Bifurcated Trial*, 49 *Calif. L.Rev.* 805, 820 (1961). Their observation, which bears repeating here, was that "[t]o draw a line between evidence of mental condition admissible at the first trial, and that admissible only at the second trial, a line that is logically satisfactory and administratively feasible, is a herculean task." *Ibid.*

Moreover, as they observed, because the State must offer evidence of mental state to prove the requisite intent, permitting it only to offer part of that evidence presents the jury with a less-than-complete and accurate record. "It is strange reasoning to say that you may prove a partial mental quirk or disability to refute the presence of intent but cannot give evidence of a total mental aberration." *Ibid.* (quoting *People v. Wells*, 33 *Cal.*2d 330, 202 *P.*2d 53, 72, *cert. denied*, 338 *U.S.* 836, 70 *S.Ct.* 43, 94 *L.Ed.* 510 (1949)).

Indeed, the same authors urged that courts avoid demanding bifurcated trials on substantive defenses and the insanity defense for exactly these reasons. They commented that

[t]he separate trial procedure, as it stands today, results in duplication. The proof admissible to show defendant's mental state at the time of the crime is substantially the same as that admissible to show insanity. No workable rule has been formulated, and probably none can be formulated, that would effectively differentiate between the two types of evidence. The separate trial procedure was based on an inaccurate premise of law. It assumed that the issue of guilt and the issue of mental condition are separable. We submit that reason shows they are not separable, and that experience confirms this conclusion. We therefore believe that the separate trial procedure should be abolished.

[*Id.* at 829–30.]

It is not the mere difficulty of drawing the line between evidence that is admissible in each of the phases of a bifurcated proceeding, and that which is not, that leads us to conclude that the substantive defense and the insanity defense must be tried in a unitary proceeding in the future. Rather, it is, as these scholars recognized, that bifurcation results in requiring the jury to be presented with evidence that is essentially incomplete.

The evidence is incomplete only because the defendant seeks to advance defenses that are potentially inconsistent. There is, however, no public policy that requires bifurcation in order to accommodate a defendant in that circumstance; on the contrary, defendants are often confronted with having to make strategic choices, including those that flow from their desire to present inconsistent defenses. That difficult reality does not compel a bifurcated proceeding. In the case of a defendant who seeks to

raise both self defense and an insanity defense, justice does not demand that he or she be permitted to argue, in the first phase of a trial, that the act was based on a reasonable belief, and thereafter, should that approach fail, be permitted to assert that he or she was mentally ill and unable to distinguish right from wrong.

We recognize that there are challenges presented by following the path of requiring that the substantive defense and the defense of not guilty by reason of insanity be tried in a unified proceeding. Our trial courts will be required to be particularly vigilant in their instructions to the jury about the purposes for which evidence is offered and the manner in which it is to be weighed in light of the shifting burdens of proof.

However, based on the experience that has been derived during the decades since *Khan* was decided, and moreso the evidence found in the record before us in this appeal, we are convinced that it is time to chart a new course. Our consideration of all of the evidence and all of the contentions of the parties has persuaded us that the course that best reduces the likelihood of constitutional infirmity and protects a defendant in his or her assertion of defenses is the requirement that there be a unitary trial.

## B.

■ The second issue raised in this appeal relates to the determination that defendant was competent to stand trial. He asserts that it was error for the trial court to foist the insanity defense upon him, insisting that once he was found competent to stand trial, he should not have been deprived of the right to refuse that defense. Although we find merit in that general conclusion, *see State v. Cecil*, 260 *N.J.Super.* 475, 489–90, 616 *A.2d* 1336 (App.Div.1992), *certif. denied*, 133 *N.J.* 431, 627 *A.2d* 1138 (1993) (detecting no error where trial court allowed defendant to forgo insanity defense in spite of history of bizarre behavior because he was otherwise able to make knowing, intelligent, and voluntary waiver of right to assert defense), we consider it appropriate to

comment on the manner in which the issue should have been addressed.

Our Criminal Code provides that one "who lacks [the] capacity to understand the proceedings against him [or her] or to assist in his [or her] ... own defense" shall not be tried for a criminal offense, at least for as long as he or she remains incompetent. *N.J.S.A.* 2C:4–4(a). The Code further sets forth the proofs needed to establish a lack of competence, *N.J.S.A.* 2C:4–4(b), as a means to create "clear standards for determining a defendant's competency to stand trial[,]" *Coruzzi, supra,* 189 *N.J.Super.* at 323, 460 *A.*2d 120.

The Code does not distinguish between competence to stand trial and competence to make other kinds of decisions relating to one's defense. Nonetheless, as this appeal demonstrates, part of the legacy of the *Khan* decision has been confusion about whether one can be competent to stand trial but incompetent to waive the insanity defense. *Compare Handy, supra,* 421 *N.J.Super.* at 592, 25 *A.*3d 1140 *and State v. Jasuilewicz,* 205 *N.J.Super.* 558, 572–73, 501 *A.*2d 583 (App.Div.1985), *certif. denied,* 103 *N.J.* 467, 511 *A.*2d 649 (1986), *and Khan, supra,* 175 *N.J.Super.* at 83–84, 417 *A.*2d 585 *with State v. Marut,* 361 *N.J.Super.* 431, 440, 444–46, 825 *A.*2d 1180 (App.Div.2003), *certif. denied,* 190 *N.J.* 256, 919 *A.*2d 850 (2007), *and Cecil, supra,* 260 *N.J.Super.* at 489–90, 616 *A.*2d 1336. Indeed, as our appellate court has observed, part of the confusion arises from the assumption that the question involves not so much the defendant's competence to waive the insanity defense but the wisdom of making that choice. *See Marut, supra,* 361 *N.J.Super.* at 444, 825 *A.*2d 1180.

We recognize that the United States Supreme Court has held that one may be competent to stand trial and yet lack sufficient competence to proceed by self-representation. *See Indiana v. Edwards,* 554 *U.S.* 164, 177–78, 128 *S.Ct.* 2379, 2387–88, 171 *L.Ed.*2d 345, 357 (2008). Our Appellate Division has concluded that the same result might obtain under our jurisprudence as well.

See *State v. McNeil*, 405 *N.J.Super.* 39, 52–53, 963 *A.*2d 358 (App.Div.), *certif. denied*, 199 *N.J.* 130, 970 *A.*2d 1047 (2009).

We, however, need not address the subject in great detail because the solution is to apply a procedure akin to that which we utilize in evaluating a competent defendant's effort to waive other significant rights. *See, e.g., State v. Crisafi*, 128 *N.J.* 499, 509–10, 608 *A.*2d 317 (1992) (citations omitted). That is, a thorough and searching inquiry of an otherwise competent defendant concerning his or her understanding of the nature of the right being waived and the implications that flow from that choice should suffice to permit the trial court to determine whether the decision to waive the insanity defense, particularly in the context of a unified trial proceeding, is indeed knowing, voluntary and intelligent.

## C.

Finally, we consider the question of remedy to be afforded defendant in light of the unusual procedural posture in which this matter has been presented to us. The Appellate Division, concluding that defendant had been deprived of his constitutional rights, but mindful of the double jeopardy implications of that conclusion, offered defendant a choice. The appellate court permitted defendant either to proceed to a new, bifurcated trial on all issues in which he could raise self defense first, but which would be conditioned on his agreement to waive the protections of double jeopardy, or to waive a trial of the substantive defense and accept the insanity verdict.

Before this Court, relying on the Appellate Division's conclusion that the proceedings that resulted in the finding of not guilty by reason of insanity were constitutionally flawed, defendant argues that the not guilty by reason of insanity finding should be vacated and that he should be released. He asserts that the constitutional infirmity precludes continued imposition of the insanity verdict on him and that double jeopardy principles prevent the State from trying him again for the underlying crime.

The State, in contrast, argues that the correct remedy is to remand the matter for a trial during which it would be required to prove the substantive elements of the crime and during which defendant could raise self defense but without the condition that he forgo the earlier-imposed insanity verdict. In the State's view, that approach would obviate any double jeopardy considerations because, consistent with the prevailing law when he was tried, he would be permitted to proceed to a trial of the substantive defense in the second phase of the trial.

Much of the debate before this Court centered on the Appellate Division's directives concerning its remand. Indeed, much of that debate focused on the implications of the principles of double jeopardy and on whether the remedy that the panel crafted, or any other remedy that one might craft, would violate that constitutional protection. Our consideration of this question requires that we recite briefly the governing principles of law.

The protections against double jeopardy are found in the United States Constitution, *U.S. Const.* amend. V (providing that no person shall "be twice put in jeopardy of life or limb" for the same offense), and in our Constitution, *N.J. Const.* art. I, ¶ 11 (providing that all persons shall not "after acquittal, be tried for the same offense"). As we have observed, the concept of the protection against double jeopardy "traces its roots to a variety of early sources." *State v. Allah,* 170 *N.J.* 269, 278, 787 *A.*2d 887 (2002) (citing *United States v. Wilson,* 420 *U.S.* 332, 339–42, 95 *S.Ct.* 1013, 1020–21, 43 *L.Ed.*2d 232, 239–41 (1975); *State v. Currie,* 41 *N.J.* 531, 535–36, 197 *A.*2d 678 (1964)).

Although we need not retrace those sources as part of our analysis, it is relevant to reiterate our explanation about the way in which the double jeopardy protection should be analyzed. As we have held, in construing the protection as set forth in our Constitution, "[i]n applying the prohibition against double jeopardy, the emphasis should be on underlying policies rather than technisms. The primary considerations should be fairness and fulfillment of reasonable expectations in the light of the constitu-

tional and common law goals." *Currie, supra,* 41 *N.J.* at 539, 197 *A.*2d 678. By the same token, we have held that the protection is not absolute and that defendants "may waive a double jeopardy claim without implicating Sixth Amendment rights." *Allah, supra,* 170 *N.J.* at 293–94, 787 *A.*2d 887.

Applying all of these principles to the matter now before us, we elect to resolve the debate between the parties in a manner that we believe will best serve the ends of justice and fairness.

First, we do not agree with defendant's assertion that the constitutional infirmities in his trial now demand that he be released. Rather, we recognize that the trial was conducted pursuant to the then-prevailing dictates of *Khan,* which mandated that there be a bifurcated trial and which imposed a sequence upon that trial in which the insanity defense would be tried first.

Second, we do not agree with the appellate panel's conclusion that in order to comply with the dictates of the Double Jeopardy Clause defendant must, as a condition of proceeding to trial on his preferred theory of self defense, relinquish the earlier-imposed insanity verdict and proceed to a new trial in which his defenses would be tried sequentially. We do not agree with that reasoning because we have now concluded that in the future, trials involving a substantive defense and the insanity defense will be tried in a unitary proceeding. But there is no reason to apply that procedure to this defendant in light of the fact that he has already been subjected to a bifurcated trial.

In the end, we agree with the approach suggested by the State. At the time when defendant was tried, he was entitled to proceed with a second phase of his trial during which, as this trial had unfolded, the State would have been required to prove the elements of the substantive crime and defendant would have been able to present his self-defense theory. The error, then, was in depriving defendant of his right to pursue that second part of the trial and instead committing him for treatment based on the insanity finding without ever affording him the chance to be acquitted of the crime based on his self-defense theory.

We see no double jeopardy impediment to remanding this matter for a continuation of the original trial in order to permit the presentation of evidence that should have been presented in the second phase of the bifurcated proceeding. In the unique circumstances of this appeal, in which the State has represented that it will not deprive defendant of the benefit of the insanity verdict should he fail on remand to demonstrate self defense to the satisfaction of the fact finder, we do not demand that defendant make a choice of remedies.

That is, because the matter was intended to be tried as a bifurcated proceeding, notwithstanding our decision to announce a different approach going forward, we conclude that the trial court's error, in accordance with the law as it then stood, was in the refusal to permit defendant to proceed on his preferred self-defense theory at all. Under the *Khan* approach, that theory should have been tried notwithstanding the finding on the insanity defense. That being the case, the trial was never completed and remanding for the further proceedings as we have directed will not implicate double jeopardy considerations.

Notwithstanding the foregoing, on remand defendant shall first be re-evaluated for competency. If he is no longer competent to stand trial, the judgment of not guilty by reason of insanity shall stand. If defendant is competent, he may elect to proceed to a trial on the substantive crime, in which he may offer his self-defense theory. At trial, all evidence that bears on the reasonableness of his beliefs and perceptions will be admissible in accordance with the principles to which we have adverted.

## IV.

The bifurcated trial procedure created in *Khan* is disapproved and that decision is overruled; the judgment of the Appellate Division is affirmed as modified; and the matter is remanded for further proceedings consistent with this opinion.

*For affirmance as modification/remandment*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, HOENS, PATTERSON and Judges RODRÍGUEZ (temporarily assigned) and CUFF (temporarily assigned)—7.

*Opposed*—None.