NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2678-09T2

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

JUNE GORTHY a/k/a
JUNE GOVERNALE,

     Defendant-Appellant.

| APPROVED FOR PUBLICATION |
| :---: |
| **September 9, 2014** |
| **APPELLATE DIVISION** |

Submitted December 5, 2011 — Decided October 9, 2012
Remanded by Supreme Court September 20, 2013
Submitted March 18, 2014 - Decided September 9, 2014

Before Judges Alvarez, Ostrer and Carroll.

On appeal from the Superior Court of New
Jersey, Law Division, Ocean County,
Indictment No. 06-11-2612.

Joseph E. Krakora, Public Defender, attorney
for appellant (Michele Adubato, Designated
Counsel, on the briefs).

Christopher J. Gramiccioni, Acting Monmouth
County Prosecutor, attorney for respondent
(Patricia B. Quelch, Special Deputy Attorney
General/Acting Assistant Prosecutor, and
Mary R. Juliano, Special Deputy Attorney
General/Acting Assistant Prosecutor, of
counsel and on the briefs).

The opinion of the court was delivered by

ALVAREZ, J.A.D.

A jury found defendant June Gorthy, also known as June Governale, not guilty by reason of insanity, N.J.S.A. 2C:4-1, on a charge of fourth-degree stalking, N.J.S.A. 2C:12-10(b).[1] Before the trial commenced, the trial judge found her competent to stand trial while unable to "voluntarily, intelligently, and knowingly waive" the insanity defense as to the stalking count. Defendant was sentenced to commitment in a mental health facility for a term not to exceed eighteen months.

After defendant's trial, but prior to our decision on her appeal, we decided State v. Handy, 421 N.J. Super. 559 (App. Div. 2011). In Handy, we concluded that a defendant found competent to stand trial, but not able to knowingly, intelligently, and voluntarily waive the insanity defense to a crime, should not be compelled to accept an acquittal by reason of insanity unless his or her substantive defenses are addressed first. See id. at 565. Only if the jury rejected a defendant's substantive defenses would defendant then present the insanity defense. Handy, supra, 421 N.J. Super. at 612-13. Consistent

---

[1] The jury convicted defendant of fourth-degree possession of prohibited weapons or devices, hollow-point bullets, N.J.S.A. 2C:39-3(f)(1), and third-degree unlawful possession of a handgun, a .22 Ruger, N.J.S.A. 2C:39-5(b). The insanity defense was not raised as to those crimes. Defendant was sentenced to concurrent five years of probation on those offenses. Because of several related arrests, incarceration pending evaluations, and the trial itself, defendant accumulated 1215 days of jail credit by September 30, 2009, the sentence date.

with our decision in Handy, we remanded to the trial court, to afford defendant the opportunity for a new trial on the stalking charge — if she were again found competent to stand trial and if she opted to waive double jeopardy. That new trial would follow the bifurcated order described in our decision in Handy — an initial trial at which defendant would present substantive defense theories, and if convicted, a second trial at which she would present only the insanity defense.

When the State's appeal of our decision reached the Supreme Court, Handy and its predecessor, State v. Khan, 175 N.J. Super. 72 (App. Div. 1980), were overruled in part, and the bifurcated procedure was disapproved. State v. Handy, 215 N.J. 334 (2013). Henceforth, "trials involving a substantive defense and the insanity defense [would] be tried in a unitary proceeding." Id. at 364.

The Court also supplied the analytical solution to the quandary posed by a defendant found competent to stand trial, who wishes to waive the insanity defense altogether when that option appears unwise. As the Court said,

> part of the legacy of the Khan decision has been confusion about whether one can be competent to stand trial but incompetent to waive the insanity defense . . . . Part of the confusion arises from the assumption that the question involves not so much the defendant's competence to waive the insanity

A-2678-09T2

defense but the wisdom of making that choice.

> [Id. at 361.]

The Court went on to observe the decision can be made by applying:

> a procedure akin to that which we utilize in evaluating a competent defendant's effort to waive other significant rights. That is, a thorough and searching inquiry of an otherwise competent defendant concerning his or her understanding of the nature of the right being waived and the implications that flow from that choice . . . the trial court [must] determine whether the decision to waive the insanity defense, particularly in the context of a unified trial proceeding, is indeed knowing, voluntary and intelligent.

> [Id. at 362 (citation omitted).]

After certification was granted on defendant's appeal, the matter was summarily remanded for reconsideration in light of the Handy decision.

Given the Court's instruction that the waiver of an insanity defense by a competent defendant was to be scrutinized on appellate review as would be any other waiver made by a competent defendant, we now affirm. The Law Division judge's decision that defendant lacked the capacity to make a knowing, intelligent, and voluntary waiver was adequately supported by the record and thus warrants affirmance.

The stalking charge was the culmination of defendant's relocation to New Jersey in 2002 from her home in Colorado, during which she moved her personal belongings, including a number of weapons, in a truck and horse trailer. Defendant came to New Jersey with the hope of encountering a seminar presenter, the victim of the stalking, whom she had met several years earlier. Defendant was eventually charged with the offenses at issue when she left a voicemail on the victim's phone despite a no-contact order.

Defendant's pretrial competency hearings extended over approximately a year. Multiple psychiatric and psychological evaluations were completed, as well as a fitness to proceed assessment under N.J.S.A. 2C:4-5 by the Department of Human Services. On April 25, 2008, the trial judge determined that defendant met the statutory test pursuant to N.J.S.A. 2C:4-4 and N.J.S.A. 2C:4-6 for competence to stand trial.[2]

On September 18, 2008, a final hearing was conducted after counsel provided the court with an evaluation by defendant's expert, Dr. Kenneth J. Weiss. It was on that date that the

---

[2] The trial judge summarized his conclusions thus: "[Defendant] comprehends that she is in a court of justice charged with a criminal offense, that there is a judge on the bench, that there is a prosecutor present who will try to convict her . . . . that she has a lawyer . . . . and [] she understands her right not to testify." Defendant does not appeal from the finding of competence to stand trial.

judge determined that, while defendant was competent to stand trial, she could not waive the insanity defense. The determination relied heavily on Weiss's report.

On remand, defendant again contends that the trial judge "should have accepted [defendant's] waiver of the insanity defense and proceeded solely on the substantive defenses." The argument is premised on the court's earlier finding that she was competent to stand trial. Defendant argues from that finding that she should therefore "also have been competent to waive the insanity defense." But, a knowing, intelligent, and voluntary waiver requires more than competence as defined by statute.

In the competency hearing, the trial judge heard testimony and reviewed reports regarding defendant's extensive mental health history and diagnoses. It became clear that defendant, despite medication and treatment efforts, persisted in her delusion that the victim wanted to continue a relationship with her. In fact, when the judge addressed defendant directly, she complained to the judge that her attorney was not representing her in the fashion that she wished because counsel would not present the defense that the victim had solicited contact. Defendant also insisted that she and the victim had enjoyed a relationship for years, the victim had asked her to relocate, and that after she did so, on multiple occasions, the victim

would attempt to see her in public, "at the post office, at the store," and would jog and ride her bicycle past defendant's house.

Along those lines, Weiss's report quoted defendant denying that her relationship with the victim was a delusion, stating that she was not actually insane during the times that she contacted the victim and that "she did not want to raise issues of her mental state at trial because the prosecutor is anti-mental illness." Defendant, who was initially in the Pretrial Intervention Program (PTI),[3] said to Weiss that the PTI probation officer had told her that the only way she would be granted the opportunity to explain her relationship with the victim to a judge would be to violate PTI, which she did, resulting in the trial.

Defendant also believed that, unless the victim stopped lying about her, she had to have a trial, as the victim was "'trying to save herself.'" Defendant agreed with Weiss that "she was mentally disturbed during the time in question[] but rather than making that an issue at trial, she want[ed] 'the truth' to come out." Defendant perceived the State to be overreacting to the situation and believed the prosecutor wanted "to do a great deal of harm to her."

---

[3] N.J.S.A. 2C:43-12 to -22.

In Weiss's opinion, defendant, despite being a person of above-average intelligence, was completely unable to realistically assess her situation vis-à-vis the victim. She repeated to Weiss the statement that she had made to others — that the victim loved her. That, Weiss said, was "most clearly against all evidence and would have to be considered delusional. Because of this, [defendant] does not see that what she did was wrong. . . . [S]he would not have a rational understanding of the basis for the charges."

Weiss opined that, on the stalking charge, defendant:

> was psychotic and delusional during the dates in question, to the point that she was unable to observe the nature and quality of her conduct. . . . [S]he did not have the residual ability to know that she would be placing the victim in fear of bodily injury or to know that she was doing wrong.

As a result of mental disease, she had a "defect of reason such that she did not know what she was doing was wrong[] . . . consistent with the requirements of N.J.S.A. 2C:4-1."

Weiss further opined that, even if defendant was found to be competent to stand trial:

> she would be making the choice to forego an insanity defense knowingly, but neither intelligently nor voluntarily. She is aware of her rights and alternatives, but fails to comprehend the consequences of failing to assert the defense, which bears on the question of an intelligent refusal. Her delusional condition has narrowed her

A-2678-09T2

> ability to form judgments about her case, and in that sense she is not acting of her own free will, which bears on the question of a <u>voluntary</u> refusal.

Ultimately, he concluded that defendant met "the test for 'insanity' with respect to the stalking charge" and "f[ell] short of the requirements in <u>Khan</u>[4] for a refusal to utilize the available insanity defense."

Substantially relying on Weiss's report, along with all the other evidence, the judge found that, despite defendant's superficially rational expressed rejection of the insanity defense because of the potential for "hospital time" that she considered the equivalent of incarceration, the real impetus behind her waiver was her imagined relationship with the victim. The judge was convinced by the State's proofs that no relationship had ever existed with the victim. He therefore decided, pursuant to <u>Khan</u>, to "assert the insanity defense" on defendant's behalf as to the stalking charge because she could not "voluntarily, intelligently and knowingly waive that defense."

The Court in <u>Handy</u> reaffirmed the notion that a trial judge could find a defendant competent to stand trial, while simultaneously finding he or she cannot voluntarily, knowingly,

---

[4] Weiss' report predated the decision in <u>Handy</u>.

and intelligently waive the insanity defense. Handy, supra, 215 N.J. at 361-62. In that scenario, the trial judge must, after a "searching inquiry," determine whether a defendant truly understands that which he or she is waiving and the potential consequences of the choice. Handy, supra, 215 N.J. at 362. In other words, whether the waiver is indeed knowing, voluntary, and intelligent. Ibid.

When considering whether a criminal defendant's waiver is sustainable, trial courts must "apply a procedure akin to that which we utilize in evaluating a competent defendant's effort to waive other significant rights." See Handy, supra, 215 N.J. at 362.

For instance, in State v. DuBois, 189 N.J. 454, 464-66 (2007), the Court entrusted the issue of a defendant's waiver of the right to counsel to the "sound discretion" of our trial judges, explaining that they are "in the best position to evaluate [a] defendant's understanding of what it mean[s] to [self-]represent [] and whether [a] defendant's decision to proceed pro se [i]s knowing and intelligent." See id. at 475.

Examining the record, as mandated by Handy, created by the judge's "thorough and searching inquiry," it is clear that the trial judge, over the multiple days of pretrial testimony regarding defendant's competence to stand trial, delved

thoroughly into defendant's psychiatric history, diagnosis, and treatment. When addressing her attempted waiver of the insanity defense, he engaged in a colloquy with her about her reasons. Defendant's responses were not related to any legal issue or consequence. The responses related on the whole to her false beliefs about the victim and her desire to affirm her imagined relationship in court. She also claimed that she could not raise the insanity defense because the prosecutor was "anti-mental illness," a statement irrelevant to the question posed.

Clearly, defendant lacked the ability to make a rational choice on the question of defenses to the stalking count. She wanted validation of the "truth" of her imagined relationship with the victim, a motive irrelevant to the legal decision of waiver, unrelated to trial strategy, or even to any legal question. On the subject of the stalking charge, defendant's reasons for waiving the insanity defense were neither intelligent, nor voluntary, arising as they did from a compulsion.

Accordingly, we find that the trial judge did not err. His conclusion was, indeed, based on "sufficient supporting evidence." See State v. Purnell, 394 N.J. Super. 28, 50 (App. Div. 2007). Defendant's decision to waive the insanity defense was not knowing, voluntary, and intelligent. See Handy, supra,

A-2678-09T2

215 <u>N.J.</u> at 362.  The judge's decision to interpose the defense over defendant's objection was correct.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2678-09T2