**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1687-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

WILLIAM E. HINES,
a/k/a BILL HINES,

     Defendant-Appellant.

_____

Argued December 2, 2020 – Decided December 24, 2020

Before Judges Alvarez, Geiger, and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Indictment No. 18-01-0140.

Stefan Van Jura, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Stefan Van Jura, of counsel and on the brief).

Nicole Handy, Assistant Prosecutor, argued the cause for respondent (Scott A. Coffina, Burlington County Prosecutor, attorney; Nicole Handy, of counsel and on the brief).

PER CURIAM

Defendant William E. Hines appeals from a November 15, 2018 judgment of conviction and sentence. After reviewing the record in light of the contentions on appeal and the applicable law, we affirm.

A jury indicted defendant of first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2) (count one); third-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count two); and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d) (count three).

The case proceeded to trial in September 2018. The State presented the following evidence. Defendant intermittently stayed in the one-bedroom apartment in Burlington Township leased by his mother, Nancy Allen, and her longtime boyfriend, Scott Willis. When staying there, defendant would sleep in the living room. The three had a tumultuous relationship, which eventually led to the stabbing death of Willis at the hands of defendant.

On August 19, 2009, Allen called the police on Willis for domestic violence, and five days later, on August 24, 2009, Allen called the police on defendant for threatening to kill both Allen and Willis if Allen remained in a relationship with Willis after the August 19 altercation. Willis was charged with harassment, simple assault, and terroristic threats and defendant was charged

with terroristic threats, but all the charges were eventually dropped. Allen again called the police on Willis on October 16, 2013, this time because Willis allegedly stood over Allen with a knife and screamed, "if I were someone else, I'd kill you."

On Sunday, October 29, 2017, Allen and Willis woke up at about 8:00 a.m. to do their customary weekend cleaning of the apartment. While defendant was sleeping on a foldout chair in the living room, Willis directed defendant to leave the area so that Willis could vacuum. Defendant refused because he did not feel well, and Willis and defendant got into "a heated argument." Allen then entered the living room and told Willis and defendant to settle down. The argument ended; Allen and Willis retreated to their bedroom to watch television.

Shortly thereafter, Allen went into the kitchen to make breakfast while defendant laid on the living room floor. Willis joined Allen in the kitchen to eat breakfast, and then they returned to their bedroom.

About twenty minutes after the argument ended, Willis briefly left the apartment to take out the trash. At that point, defendant entered the bedroom and told Allen, "mom, I'm going to kill him." Allen told defendant he was acting crazy and, after returning to the apartment and hearing this statement, Willis

3

replied, "this guy is really out of his mind. He wants to hurt me and he wants to hurt you." No immediate verbal or physical altercation ensued.

Shortly thereafter, Willis decided to take a shower. He reentered the bedroom, took off his clothes, wrapped himself in a towel, and walked to the bathroom. While Willis was in the shower with the bathroom door closed but unlocked, defendant retrieved a red-handled steak knife from the kitchen and entered the bathroom. After seeing defendant enter the bathroom with a knife, Allen quickly went to the bathroom and witnessed defendant repeatedly stabbing Willis in the bathtub. Allen tried to stop defendant both verbally and physically, but defendant pushed Allen away and continued to stab Willis. Allen was eventually able to get defendant to stop the attack and told Willis to close and lock the bathroom door.

After ceasing the attack, defendant told Allen he was acting in self-defense and he would "get him." Allen called 911 and told defendant to leave the apartment. Allen noticed a severe cut on defendant's hand and a red-handled knife in his back pocket.

Allen testified that she did not see Willis attacking defendant or Willis holding any weapons. Willis was rushed to the hospital but died a few days later, having sustained approximately ten to fifteen wounds.

A-1687-18T4

At the close of the State's case, defendant unsuccessfully moved for judgment of acquittal under R. 3:18-1. The court found the evidence presented by the State established that defendant "stabbed the victim while he was in the shower. The victim died as a result thereof." Hence, "the evidence is such that a reasonable jury could conclude beyond a reasonable doubt that the defendant" was guilty of murder and the weapons offenses.

Defendant testified in his own defense. He stated that Willis instigated him on the day of the killing by telling defendant "[he] should get up, [he had] no right to be sleeping. [He] don't have a job. [He was] in [Willis's] way, things of that nature." Defendant also testified that during their exchange in the living room, he used his phone to play recent recordings that Allen and Willis could hear of Willis having conversations with women in an attempt to meet them. Defendant stated that the recordings made Allen "quite upset" and "infuriated" Willis."

Defendant testified that after this exchange, Willis went to the kitchen to retrieve a knife and used it to threaten defendant. Defendant then retrieved a knife of his own for protection and went to confront Willis while he was in the shower because "[he] figured [he] had to do something."

 A-1687-18T4

Defendant stated that when he opened the bathroom door to confront Willis, Willis was facing the mirror above the sink countertop, where Willis had a knife. Defendant testified that Willis saw defendant coming and grabbed the knife from the countertop and swung it toward defendant, striking defendant's hand. Defendant stated that he grabbed the knife that Willis used and used it to defend himself, stabbing Willis. He then dropped the knife to the bathroom floor and left the apartment at Allen's insistence.

Defendant stated that at the time of the incident, he was 5'7" and 150 pounds, while Willis was about six feet tall and 200 pounds. Allen had previously testified that Willis weighed 300 pounds.

On rebuttal, the State presented evidence that, contrary to defendant's testimony, the stabbing took place while Willis was in the bathtub. The State also presented a recorded conversation between defendant and Allen while he was in jail, during which he said that she could ignore the subpoena or "plead the Fifth" at trial.

The trial court instructed the jury on passion-provocation and self-defense, based primarily on the model jury charges. The parties agreed to the jury charges. As to self-defense, the judge said:

> If you find that the defendant with a purpose of causing death or serious bodily harm to another person

A-1687-18T4

provoked or incited the use of force against himself in the same encounter, then the defense is not available to him.

If you find that the defendant knew that he could avoid the necessity of using deadly force by retreating, provided that the defendant knew he could do so with complete safety, then the defense of self-defense is not available to him.

In your inquiry as to whether the defendant who resorted to the use of deadly force knew there was an opportunity to retreat with complete safety and that such an opportunity was available, you may consider the total circumstances, including the attendant excitement accompanying the situation.

The court also instructed the jury that the State had the burden to prove "beyond a reasonable doubt that [] defendant knew he could have retreated with complete safety."

Relevant to this appeal, the court did not provide the additional instruction contained in footnote four of the model jury charge, which states: "An exception to the rule of retreat, however, is that a person need not retreat from his or her own dwelling, including the porch, unless he or she was the initial aggressor. N.J.S.A. 2C:3-4(b)(2)(b)(i)." Model Jury Charges (Criminal), "Justification – Self Defense in Self Protection (N.J.S.A. 2C:3-4)" at 3 n.4 (rev. June 13, 2011). The jury found defendant guilty of all three counts.

A-1687-18T4

At the sentencing hearing on November 15, 2018, the State requested the judge to sentence defendant to life as a persistent offender. Defense counsel argued that defendant, who was thirty-five years old, should be sentenced to the mandatory minimum of a thirty-year sentence, subject to a thirty-year period of parole ineligibility.

The trial court found aggravating factor three (risk defendant will reoffend), N.J.S.A. 2C:44-1(a)(3). Defendant had at least twelve prior adult arrests, suggesting he would likely reoffend.

The trial court also found aggravating factor six (prior record), N.J.S.A. 2C:44-1(a)(6). Defendant was previously convicted of theft by unlawful taking, possession of a controlled dangerous substance, criminal sexual contact, and criminal restraint, had at least three municipal court convictions, and two violations of probation.

The court further found aggravating factor nine (need for deterrence), N.J.S.A. 2C:44-1(a)(9). The court noted the violent nature of the crime committed and the need to keep defendant from harming others, as well as the need to deter others from committing similar crimes.

A-1687-18T4

As to mitigating factor three ("defendant acted under a strong provocation"), N.J.S.A. 2C:44-1(b)(3), the court found that outside of a few unfavorable words toward defendant, Willis did nothing to provoke him.

Regarding mitigating factor five (victim induced or facilitated defendant's conduct), N.J.S.A. 2C:44-1(b)(5), the court found that Willis "certainly didn't stab himself. He wouldn't have participated in a crime to harm himself."

As to mitigating factor eight ("defendant's conduct was the result of circumstances unlikely to recur"), N.J.S.A. 2C:44-1(b)(8), the judge concluded defendant's "prior record indicates that there is every likelihood that if released, he would commit another offense." Furthermore, since his release from prison in 2013, defendant had been arrested four times and convicted of simple assault. Therefore, "defendant's criminal history reveals an increasing frequency of contact with the law and an escalation of violent behavior."

The court did not consider mitigating factor four ("substantial grounds tend[ed] to excuse or justify the defendant's conduct, though failing to establish a defense"), N.J.S.A. 2C:44-1(b)(4).

The court "conclude[d] that the aggravating factors clearly and substantially outweigh[ed] the mitigating factors. On count one, the court sentenced defendant to a life term, subject to the No Early Release Act (NERA),

9

N.J.S.A. 2C:43-7.2, and appropriate penalties and assessments. The court merged counts two and three into count one and declined to impose an extended term. This appeal followed.

Defendant raises two points for our consideration:

POINT I

DEFENDANT WAS DENIED DUE PROCESS AND A FAIR TRIAL BY A FAULTY SELF-DEFENSE JURY CHARGE -- EXACERBATED BY PROSECUTORIAL ERROR -- WHICH ERRONEOUSLY INSTRUCTED THE JURY THAT DEFENDANT HAD A DUTY TO RETREAT IN HIS OWN DWELLING. U.S. Const. amend. XIV; N.J. Const. art. 1, pars. 1, 9, and 10. (Not Raised Below.)

POINT II

THE IMPOSITION OF A LIFE SENTENCE WAS MANIFESTLY EXCESSIVE AND UNDULY PUNITIVE WHERE DEFENDANT RAISED A BONA FIDE CLAIM OF SELF-DEFENSE.

I.

In Point I, defendant argues that a faulty self-defense jury charge, exacerbated by prosecutorial error, denied him due process and a fair trial. He asserts that the State's summation and a significant portion of its proofs focused on defendant's opportunity to leave the apartment when Willis took out the trash or got into the shower. Defendant contends the jury may well have found self-

defense inapplicable because defendant did not retreat from the apartment. We are unpersuaded by this argument.

N.J.S.A. 2C:3-4 provides the following guidance on self-defense:

> a. Use of force justifiable for protection of the person. Subject to the provisions of this section and of section 2C:3-9, the use of force upon or toward another person is justifiable when the actor reasonably believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.
>
> b. Limitations on justifying necessity for use of force.
>
>     . . . .
>
> (2) The use of deadly force is not justifiable under this section unless the actor reasonably believes that such force is necessary to protect himself against death or serious bodily harm; nor is it justifiable if:
>
> (a) The actor, with the purpose of causing death or serious bodily harm, provoked the use of force against himself in the same encounter; or
>
> (b) The actor knows that he can avoid the necessity of using such force with complete safety by retreating . . . , except that:
>
> (i) The actor is not obliged to retreat from his dwelling, unless he was the initial aggressor . . . .

In order to succeed on a self-defense claim where the defendant used deadly force, the jury must find that: (1) the defendant had an honest and

reasonable belief that deadly force was immediately necessary to protect himself or herself from serious bodily injury or death, and (2) the defendant did not provoke the attacker. N.J.S.A. 2C:3-4(a) and (b)(2)(a); State v. Gentry, 439 N.J. Super. 57, 66-69 (App. Div. 2015). Whether the defendant's belief was reasonable is measured by what the jury, not the defendant, considers reasonable under an objective standard. State v. Bess, 53 N.J. 10, 16 (1968). Accord State v. Handy, 215 N.J. 334, 356-57 (2013).

"The home is accorded special treatment within the justification of self-defense." State v. Montalvo, 229 N.J. 300, 319 (2020). If the alleged assault occurred outside the defendant's dwelling, the jury must also find that the defendant was unable to retreat with complete safety. N.J.S.A. 2C:3-4(b)(2)(b); State v. Rodriguez, 195 N.J. 165, 175 (2008); State v. Gartland, 149 N.J. 456, 467 (1997). Conversely, if the alleged assault occurred in the defendant's dwelling, the duty to retreat does not exist, so long as the defendant did not provoke the attacker. Montalvo, 229 N.J. at 320.

Jury instructions "must provide a 'comprehensible explanation of the questions that the jury must determine, including the law of the case applicable to the facts that the jury may find.'" Ibid. (quoting State v. Singleton, 211 N.J. 157, 181-82 (2012)). In essence, the court's instructions on the law are a

12

"roadmap" for the jurors.  State v. Fowler, 239 N.J. 171, 192 (2019).  "[W]ithout an appropriate charge a jury can take a wrong turn in its deliberations."  State v. Martin, 119 N.J. 2, 15 (1990).

The pertinent model jury charge makes clear that the "castle" doctrine must guide jurors in their deliberations over a defendant's assertion of self-defense when the defendant had been attacked in his or her own dwelling.  See Model Jury Charges (Criminal), "Justification - Self-Defense in Self Protection (N.J.S.A. 2C:3-4)" at 3 n.4 (rev. June 13, 2011).  The model charge includes an important proviso in footnote 4 that cautions that:  "An exception to the rule of retreat, however, is that a person need not retreat from his or her own dwelling, including the porch, unless he or she was the initial aggressor."  Id. at 3 (emphasis added) (citing N.J.S.A. 2C:3-4(b)(2)(b)(i)).

Defense counsel did not raise an objection to the absence of this potentially critical portion of the charge.  The question is whether this purported flaw in the charge was "plain error" or instead was merely harmless.  State v. Daniels, 182 N.J. 80, 95 (2004).

"Plain error refers to any error 'clearly capable of producing an unjust result.'"  Montalvo, 229 N.J. at 320-21 (quoting R. 2:10-2).  When a defendant asserts plain error arising from a flawed jury instruction that was not objected

to below, he or she must establish: (1) "legal impropriety in the charge prejudicially affecting [his or her] substantial rights" and (2) an error "sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Chapland, 187 N.J. 275, 289 (2006) (quoting State v. Hock, 54 N.J. 526, 538 (1969)). Stated another way, the flawed jury instruction must "raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971).

The first part of this two-part test—legal impropriety in the charge—is contested by the State. It contends that the self-defense charge as given was proper. We must therefore determine whether the jury should have been advised that, unless the State proved he was the initial aggressor, defendant had no duty to retreat in his own residence.

The second part of the test concerns whether the alleged error was harmful or harmless. In that vein, we must heed the well-settled maxim that errors in a jury charge in a criminal case are generally regarded as "poor candidates" for the application of the harmless error doctrine "and are ordinarily presumed to be reversible error." State v. Afanador, 151 N.J. 41, 54 (1997) (citing State v.

Brown, 138 N.J. 481, 522 (1994)). See also State v. McKinney, 223 N.J. 475, 495 (2019) (reaffirming this longstanding principle).

If there is a rational basis for it in the record, self-defense must be charged. See State v. Kelly, 97 N.J. 178, 200 (1984) (stating that "if any evidence raising the issue of self-defense is adduced, either in the State's or the defendant's case, then the jury must be instructed" on that defense). In deciding whether defendant is entitled to a jury instruction on a specific defense, the evidence is "viewed in the light most favorable to the defendant." State v. Galloway, 133 N.J. 631, 648-49 (1993) (citing State v. Breakiron, 108 N.J. 591, 617 (1987)).

That said, "the prejudicial effect" of the flawed instruction "must be evaluated in light of the totality of the circumstances–including . . . whether the weight of the evidence was overwhelming." State v. Camacho, 218 N.J. 533, 551 (2014) (quoting Kentucky v. Whorton, 441 U.S. 786, 789 (1979)). Absent objection by the defendant, we will uphold a jury verdict despite a flawed jury instruction if the evidence against the defendant was so overwhelming that a reasonable jury would not have reached a different verdict even if it received a correct instruction. See Macon, 57 N.J. at 336 (explaining that to constitute plain error, there must be "a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached").

Here, the trial court instructed the jury on self-defense, including the use of deadly force, but omitted instruction on the exception to the duty to retreat under the castle doctrine. Essentially, defendant argues that the jury was left with the impression that he was obligated to retreat from the apartment he lived in even if not the initial aggressor.

Applying these principles, we find no plain error "clearly capable of producing an unjust result." R. 2:10-2. Viewing the evidence in the light most favorable to defendant, a reasonable jury could find defendant was the initial aggressor. Defendant himself testified that after his argument with victim ended, over thirty minutes had passed before he entered the bathroom. Indeed, defendant testified that in the time between the verbal argument and the stabbing, the victim made breakfast, watched television, and took out the trash. On cross-examination, defendant acknowledged that he could have left the apartment or called the police when Willis entered the bathroom to take a shower. Coupled with defendant's statement to Allen that he was going to kill the victim, the evidence in this case is overwhelming that any provocation from the verbal argument had dissipated and that he was the initial aggressor.

Given these controlling facts, the absence of a jury instruction about the exception to the duty to retreat under the castle doctrine was harmless. We affirm defendant's conviction.

## II.

In Point II, defendant argues that his life sentence was manifestly excessive and unduly punitive because he raised a bona fide claim of self-defense and acted under a strong provocation. He contends that a thirty-year term with a thirty-year period of parole ineligibilty is more than adequate given his age. We are unpersuaded.

Defendant was convicted of first-degree murder, the most serious offense under our criminal code. The sentencing range for murder is thirty years to life imprisonment, subject to the mandatory periods of parole ineligibility and parole supervision required by NERA. N.J.S.A. 2C:11-3(b)(1); N.J.S.A. 2C:43-7.2(a), (c), (d)(1). Because NERA declares that a "sentence of life imprisonment shall be deemed to be 75 years," N.J.S.A. 2C:43-7.2(b), a defendant convicted of murder, who is sentenced to life imprisonment, "is ineligible for parole for sixty-three years and nine months. State v. McGuire, 419 N.J. Super. 88, 105 (App. Div. 2011). A trial court has no discretion on the imposition of the NERA parole

A-1687-18T4

ineligibility term. State v. Johnson, 376 N.J. Super. 163, 168-69 (App. Div. 2005).

Defendant was sentenced to life, subject to the parole ineligibility period mandated by NERA. The court noted that defendant "will not be parole eligible until he is 97 years old." Defendant does not claim that his sentence is illegal or unconstitutional.

"An appellate court's review of a sentencing court's imposition of sentence is guided by an abuse of discretion standard." State v. Jones, 232 N.J. 308, 318 (2018). We "must affirm the sentence of a trial court unless: (1) the sentencing guidelines were violated; (2) the findings of aggravating and mitigating factors were not 'based upon competent credible evidence in the record'; or (3) 'the application of the guidelines to the facts' of the case 'shock[s] the judicial conscience.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).

"[M]itigating factors that are suggested in the record, or are called to the court's attention, ordinarily should be considered and either embraced or rejected on the record." State v. Blackmon, 202 N.J. 283, 297 (2010) (citing State v. Dalziel, 182 N.J. 494, 504-05 (2005)). A trial court need not, however, "explicitly reject each and every mitigating factor argued by a defendant." State

v. Bieniek, 200 N.J. 601, 609 (2010).  Where the aggravating factors predominate, the sentence imposed will lean "toward the higher end of the range," giving appropriate weight to all the factors.  State v. Case, 220 N.J. 49, 64-65 (2014) (citation omitted).

Defendant argues that his sentence is manifestly excessive and unduly punitive.  This argument lacks sufficient merit to warrant extended discussion. R. 2:11-3(e)(2).  Suffice it to say, the judge's finding of aggravating factors three, six, and nine were amply supported by the record.  Defendant had four prior indictable convictions on three different sentencing dates.  In light of defendant's prior record and his escalating violent behavior, we have no occasion to disturb the judge's findings that:  there was a substantial risk defendant would commit other offenses; defendant's prior record was both extensive and serious; and there was a need to deter defendant and others from committing the crime of murder.

The record also fully supports the judge's finding of no mitigating factors. The jury rejected defendant's claim that he acted in self-defense.  The record supports the judge's conclusion that defendant did not act under a strong provocation, that the victim did not facilitate the commission of the crime, and

A-1687-18T4

that defendant is likely to commit another offense if released. The aggravating factors obviously outweighed the non-existent mitigating factors.

The judge also considered the real-time consequences of the life sentence under NERA. The judge noted because defendant must serve eighty-five percent of seventy-five years under NERA, "[i]t is unlikely defendant will ever be released from prison, given his present age."

As the judge adhered to the sentencing guidelines and defendant's sentence is not manifestly excessive or unduly punitive and does not shock the judicial conscience, we perceive no basis to disturb defendant's sentence.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1687-18T4